UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

YCF TRADING INC.,

                                 Plaintiff,

                v.

SKULLCANDY, INC. and JOHN DOE,

                                 Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
24-CV-02540 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff YCF Trading Inc. commenced the above-captioned action against Defendants

Skullcandy Inc. ("Skullcandy") and John Doe on April 4, 2024, asserting trade libel, defamation,

tortious interference with contract, and tortious interference with business relations claims under

New York law and seeking a declaration of trademark noninfringement under the Declaratory

Judgment Act, 28 U.S.C. §§ 2201–2202.[1]  (Compl., Docket Entry No. 1.)  On August 19, 2024,

Defendants moved to dismiss the Complaint for failure to state a claim pursuant to Federal Rule

of Civil Procedure 12(b)(6), and Plaintiff opposed the motion.[2]

---

[1]  Plaintiff's prayer for relief includes "[p]reliminary and permanent injunction
restraining Defendants, their agents, servants, employees, successors and assigns, and all others
in concert and privity with Defendants, from filing complaints with Amazon and any other e-
commerce platform" and "[i]njunctive relief requiring Defendants to rescind and retract all
complaints that they have filed against Plaintiff."  (Compl. 15.)  The Court does not consider the
issue because Plaintiff has not moved for this relief and the parties have not briefed it.  *See, e.g.*,
*Gillums v. Semple*, No. 18-CV-947, 2018 WL 3715278, at *6 (D. Conn. Aug. 3, 2018) ("[A]
preliminary injunction may be issued 'only on notice to the adverse party'" and "to the extent
[the plaintiff] seeks a preliminary injunction, [it] may file a motion seeking such relief."  (quoting
Fed. R. Civ. P. 65(a)(1))); *GP Acoustics (US) Inc. v. J&V Audio Inc.*, No. 17-CV-5305, 2017 WL
11570460, at *2 (S.D.N.Y. Dec. 6, 2017) (declining to consider a preliminary injunction where
"plaintiff ha[d] taken no further action to seek such relief, such as moving for [the] injunction").

[2]  Skullcandy filed the motion and seeks to dismiss the Complaint in its entirety.  The

For the reasons explained below, the Court denies Defendants' motion to dismiss as to Plaintiff's defamation *per se* claim and grants Defendants' motion as to Plaintiff's trade libel, tortious interference with contract, tortious interference with business relations, and declaratory judgment claims.[3]

---

Court construes the motion as filed on behalf of both Defendants and applies Plaintiff's arguments in opposition to both Defendants. (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 19; Decl. of Matthew Kepke in Support of Defs.' Mot. ("Kepke Decl."), Docket Entry No. 19-1; Skullcandy Compl. Details for ASIN B0CVBJXFW9 ("Kepke Ex. 1"), annexed as Ex. 1 to Kepke Decl., Docket Entry No. 19-2; Skullcandy Compl. Details for ASIN B0CMY27G8X ("Kepke Ex. 2"), annexed as Ex. 2 to Kepke Decl., Docket Entry No. 19-3; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 19-4; Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), Docket Entry No. 20; Defs.' Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 21.)

[3] Plaintiff construed Defendants' motion to dismiss as pertaining to claims against Skullcandy. Because Plaintiff's allegations as to John Doe are the same as its allegations against Skullcandy, the Court dismisses Plaintiff's trade libel, tortious interference with contract, tortious interference with business relations, and declaratory judgment claims against John Doe for the same reasons it dismisses the claims against Skullcandy. Plaintiff had notice and opportunity to be heard on the dismissal of the claims against John Doe as (1) Defendants repeatedly asserted that they were moving to dismiss the Complaint in its "entirety with prejudice," (Defs.' Mot. 1; Defs.' Mem. 17; *see* Defs.' Reply 11); (2) Plaintiff's arguments in opposition to the dismissed claims apply equally to John Doe and Skullcandy because Plaintiff blanketly attributes all allegations of wrongdoing to both Defendants and has not alleged any additional facts as to John Doe other than identifying the individual as Skullcandy's agent, (*see* Compl. ¶ 14); and (3) the deficiencies in Plaintiff's claims would apply even if John Doe's actual name was pleaded in the Complaint. In addition, the Court grants Plaintiff leave to replead the dismissed tort claims against both Skullcandy and John Doe. *See Wisoff v. City of Schenectady, N.Y.*, 568 F. App'x 28, 30 n.2 (2d Cir. 2014) ("A district court may dismiss an action *sua sponte* for failure to state a claim so long as the plaintiff is given notice of the grounds for dismissal and an opportunity to be heard" (citing *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991))); *Muka v. Murphy*, 358 F. App'x 239, 241 (2d Cir. 2009) ("A district court's ability *sua sponte* to dismiss a complaint that lacks a basis in law or fact is well-established." (citing *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000)); *Kelly v. Town of Southold*, No. 21-CV-3215, 2023 WL 6050494, at *10 (E.D.N.Y. June 7, 2023) (quoting same), *report and recommendation adopted*, 2023 WL 6050288 (E.D.N.Y. Sept. 15, 2023); *Thomas*, 943 F.2d at 260 ("[C]ourt on its own initiative may note the inadequacy of the complaint and dismiss it for failure to state a claim as long as the procedure employed is fair." (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 301 (1990))); *e.g.*, *Buczek v. Seterus LLC*, No. 16-CV-268, 2024 WL 1303590, at *6 n.5 (W.D.N.Y. Mar. 27, 2024) (dismissing claims against Doe defendants *sua sponte* where "there [was] no indication that the claims against the Doe defendants would be materially distinguishable from those asserted against the named

## I.  Background

At all relevant times, Plaintiff was a corporation existing under the laws of the State of New York.[4]  (Compl. ¶ 1.)  Skullcandy is a corporation existing under the laws of the State of Utah.  (*Id.* ¶ 2.)  John Doe is Skullcandy's agent.  (*Id.* ¶ 14.)

### a.  Factual allegations

#### i.  Plaintiff's resale business on Amazon's online marketplace

Skullcandy is a manufacturer and distributor of earphones and headphones ("Skullcandy Products"), (*id.* ¶¶ 11, 13, 71), and owns United States Trademark Registration No. 4622094 for Skullcandy Products bearing the "true [Skullcandy] mark" ("Skullcandy Registration"), (*id.* ¶¶ 12, 72).  Plaintiff lawfully acquires and resells various products for a profit, including Skullcandy Products.  (*Id.* ¶¶ 15, 35–36.)  Plaintiff stocks, displays, and resells new Skullcandy Products in their original packaging.  (*Id.* ¶¶ 72, 73.)

Amazon is the world's largest online retailer and allows third parties to sell products on its online e-commerce platform, providing third party sellers with exposure to the world marketplace on a scale that no other online retailer can currently provide.  (*Id.* ¶¶ 20–23.)  Third-party sellers create online storefronts on Amazon.  (*Id.* ¶ 25.)  When a customer buys a product on Amazon, the customer sees the online store just as the customer would a brick-and-mortar store.  (*Id.*)

---

defendants, and therefore, such claims would be subject to dismissal on the same grounds"); *Leftridge v. Jud. Branch*, No. 22-CV-411, 2023 WL 4304792, at \*12 (D. Conn. June 30, 2023) (dismissing claims against unknown employees on the same grounds as named employees because "there [were] no freestanding allegations of wrongdoing by the unknown employees" and "[a]ll mentions of unknown employees are tacked on to allegations against other employees"); *Thompson v. Kelly*, No. 18-CV-1235, 2019 WL 2374119, at \*5 (N.D.N.Y. Apr. 4, 2019) (dismissing claims against four unnamed Doe defendants because they could not "proceed for the same reason as [plaintiff's] claim against the named [d]efendant"), *report and recommendation adopted*, 2019 WL 2371607 (N.D.N.Y. June 5, 2019).

[4]  The Court assumes the truth of the factual allegations in the Complaint for the purpose of deciding Skullcandy's motion.

Plaintiff has a contractual and business relationship with Amazon, under which it is permitted to sell products on Amazon's e-commerce platform as a third-party seller. (*Id.* ¶¶ 24, 105.) Plaintiff entered into the Amazon Services Business Solutions Agreement ("BSA") with Amazon. (*Id.* ¶ 106.) The BSA, "including Paragraph S-1.2: (1) allows Plaintiff to list products for sale on the Amazon marketplace and promote the products; and (2) requires that Amazon process orders and remit payment to Plaintiff for sales." (*Id.* ¶ 107.) Plaintiff acquires products from reputable sources and resells the same products at a profit, including Skullcandy Products, through its online Amazon storefront called Bapons. (*Id.* ¶¶ 17, 27.) In general, in a process known as "Fulfillment by Amazon," Amazon completes customer transactions on Amazon's storefront by shipping Plaintiff's products from an Amazon warehouse. (*Id.* ¶ 28.) Plaintiff has invested significant efforts into building a successful and reputable Amazon storefront and has served hundreds of thousands of customers. (*Id.* ¶¶ 18, 29.) A significant portion of Plaintiff's business is derived from the sale of products through its Amazon storefront. (*Id.* ¶ 26.)

### ii.    Defendants' complaints to Amazon about Plaintiff's alleged sale of counterfeit Skullcandy Products

On March 21, 2024, Skullcandy filed a "series of false complaints" with Amazon indicating that two of Plaintiff's Skullcandy Product listings were counterfeit ("Amazon Reports").[5] (Kepke Ex. 1; Kepke Ex. 2; Compl. ¶ 55.) Doe submitted the Amazon Reports and

---

[5] Skullcandy provided copies of the Amazon Reports as exhibits to its motion. (Kepke Ex. 1; Kepke Ex. 2; *see* Defs.' Mem. 8 n.2.) On a motion to dismiss, "the district court is normally required to look only to the allegations on the face of the complaint" but "may consider documents that 'are attached to the complaint,' 'incorporated in it by reference,' 'integral' to the complaint, or the proper subject of judicial notice." *United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) (quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)); *see Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and other documents "integral" to the complaint (first quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); and

4

signed them under penalty of perjury. (*See id.* ¶¶ 44, 55.) Each Amazon Report described the

product,[6] indicated that Defendants were reporting trademark infringement based on a

counterfeit product and noted, "This Seller is listing a product bearing Skullcandy trademarks. It

is not a product that exists in our brand's catalog. Please have this listing removed from the US

marketplace." (Kepke Ex. 1; Kepke Ex. 2.) When submitting an infringement report to

Amazon, an intellectual property rights owner must read and accept the following statements:

> I have a good faith belief that the content(s) described above
> violate(s) my rights described above or those held by the rights
> owner, and that the use of such content(s) is contrary to law.
>
> I declare, under penalty of perjury, that the information contained in
> this notification is correct and accurate and that I am the owner or
> agent of the owner of the rights described above.

(Compl. ¶¶ 44, 46 (quoting Report Infringement, Amazon,

https://www.amazon.com/report/infringement (last visited October 31, 2019)).)

"In order to meet a minimum liability standard," for third party sales, Amazon "act[s]

upon properly submitted and completed notice claims of infringement" by "notify[ing] specified

---

then quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010))); *see also, e.g.*, *Glob. Network Commc'ns., Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (finding reversible error where the district court considered defendant's submission of a trial transcript in an unrelated proceeding and relied on it to "make a finding of fact that *controverted* the plaintiff's own factual assertions set out in its complaint"). The exhibits are referenced in the Complaint, (*see, e.g.*, Compl. ¶¶ 48, 50), and Plaintiff cites to them in its opposition to Skullcandy's motion, (*see* Pl.'s Opp'n 6, 15). The Court therefore considers Skullcandy's copies of the Amazon Reports as integral to the Complaint.

[6] The first Amazon Report concerns a product named "Skullcandy Crusher ANC 2 Overear Wireless Headphones – Wireless Over Ear Bluetooth Headphones Bundle with Protective Case, USB-C Cable, Airplane Jack – Sensory Bass Active Noise Canceling Headphones" with Amazon Standard Identification Numbers ("ASIN") B0CVBJXFW9. (Kepke Ex. 1; *see also* Compl. ¶ 48.) The second Amazon Report relates to "Skullcandy Crusher Evo Over-Ear Wireless Headphones Bundle with Protective Case and USB-C Cable – Skullcandy Headphones Wireless Bluetooth with Adjustable Haptic Sensory Bass, 40 Hr Battery (Black)" with ASIN B0CMY27G8X. (Kepke Ex. 2; Compl. ¶ 50.)

marketplace sellers which party reported them, on what listing, and how to reach that would-be rights owner via email." (*Id.* ¶ 38 (quoting Chris McCabe, *False Infringement Claims are Rife on Amazon*, WebRetailer (Apr. 11, 2018), https://www.webretailer.com/lean-commerce/false-infringement-claims-amazon/).) Amazon "[i]nvestigators merely check the [notice claim of infringement] for completed content in all the right spaces, kill the listings and send off the notifications." (*Id.*) Unless the seller "and possibly [its] legal team" can prove that the "[n]otice claim is false, Amazon considers it valid and actionable." (*Id.*)

### iii.  Amazon suspends Plaintiff's Skullcandy Products listings

On March 24, 2024, Amazon notified Plaintiff about one of its Skullcandy Products referenced by its Amazon Standard Identification Numbers ("ASIN"), stating:

> Hello,
>
> We are contacting you because we received a report of trademark infringement on the product detail page associated with one or more of your listings. Sellers on Amazon.com are not allowed to use trademarked terms in a way that might lead their product to be confused with a different trademarked product.
>
> Please modify your product and product detail page to ensure they do not infringe on the trademark of the rights owner listed below.
>
> Examples of unacceptable terms:
>
> --"AmazonBasics speaker charging cable." AmazonBasics is trademarked by Amazon.
>
> -- "Wireless Amazon speaker for laptop." Amazon is trademarked by Amazon.
>
> -- "Cable similar to Pinzon." Pinzon is trademarked by Amazon, and we prohibit the use of "similar to."
>
> Examples of acceptable terms:
>
> -- "Cable for charging AmazonBasics speaker." The cable is not created or sold by Amazon.
>
> -- "Wireless speaker for laptop, compatible with AmazonBasics."

The speaker is not created by Amazon.

-- "Basic cable works with Pinzon." The cable is not sold or created by Pinzon.

How do I submit this information?

Go to Received Intellectual Property Complaints under the Product Policy Compliance section in account health (https://sellercentral.amazon.com/performance/dashboard?ref=ah_em_mpa) and locate the deactivation record for this product listing. Click on the Appeal button next to the listing deactivation record to submit information necessary to reactivate your listing.

To learn more about this policy, search for "Intellectual Property Violations" in Seller Central Help.

These are the rights owner's contact details:

-- Skullcandy

-- amazon.support@skullcandy.com

ASIN: B0CVBJXFW9

Trademark number: 4622094

Complaint ID: 14981680891

(*Id.* ¶ 48.)  In response to the Amazon Reports, Amazon suspended "at least two" of Plaintiff's listings and selling privileges for Skullcandy Products.  (*Id.* ¶¶ 55, 58, 82, 91.)

After Amazon suspended Plaintiff's listings and selling privileges, Plaintiff suffered an immediate loss in revenue and "lost dealings." (*Id.* ¶¶ 58, 84, 100–01, 117).  Plaintiff's reputation with customers is damaged, and customers are avoiding purchasing products from Plaintiff.  (*Id.* ¶¶ 83, 91.)  The Amazon Reports "caused disruption of Plaintiff's relationship and contract with Amazon, including a breach of Paragraph S-1.2 of the BSA.  (*Id.* ¶ 111.)  Amazon is avoiding purchasing products from Plaintiff, and Plaintiff's relationship and reputation with Amazon is damaged.  (*Id.* ¶¶ 83–84, 91.)   It is well-known that as much as ninety percent of all Amazon sales occur from Amazon's "buy box," a section of an Amazon product detail page

where customers can add a product to their cart. (*Id.* ¶ 67.) Amazon determines which seller gets the "buy box" based on a number of factors, including the seller's performance metrics. (*Id.* ¶ 68.) Defendants' Reports have irreparably damaged Plaintiff's performance metrics, (*id.* ¶ 66), leading Plaintiff to lose the "buy box" on many product listings, (*id.* ¶ 69).

### iv.    Skullcandy refuses to retract the Amazon Reports

On or about March 28, 2024, Plaintiff asked Skullcandy in writing to retract the Amazon Reports because the identified Skullcandy Products were genuine, unaltered, and not counterfeit. (*Id.* ¶¶ 36, 56, 72.) On April 1, 2024, Skullcandy's General Counsel acknowledged by email that "Defendants did not conduct a test purchase," (*id.* ¶¶ 43, 45), and that Defendants "have no conclusive evidence that the alleged product is in fact counterfeit, and that the products may be authentic products that were merely 'improperly diverted,'" (*id.* ¶ 43).

Plaintiff alleges that the Amazon Reports filed by Defendants "were knowingly false and made in bad faith," (*id.* ¶ 53; *see id.* ¶¶ 64, 96), and that "[o]n information and belief, prior to filing the . . . [Amazon Reports], Defendants knew, or should have known, that the Skullcandy Products sold by Plaintiff were not counterfeit and did not infringe the Skullcandy Registration," (*id.* ¶¶ 52, 85). Plaintiff contends that Amazon's policy of "acting on virtually any notice of intellectual property infringement, whether legitimate or not," is "well-known among brand owners." (*Id.* ¶¶ 37, 38, 40.) Brand owners also know that infringement complaints to Amazon put sellers in jeopardy of "full selling suspension," meaning that "the ability to sell any and all products on Amazon would be lost." (*Id.* ¶ 59.) Plaintiff alleges "[o]n information and belief," that "Defendants were aware of the foregoing Amazon policy with respect to reports of intellectual property infringement" and that "Amazon acts on reports of counterfeit products, regardless of the truth of the report." (*Id.* ¶¶ 39–40.) Defendants filed the Amazon Reports accusing Plaintiff of selling counterfeit Skullcandy Products to damage Plaintiff's reputation and

goodwill, so that Amazon would suspend or terminate its relationship with Plaintiff, preventing Plaintiff from selling genuine Skullcandy Products on Amazon, (*id.* ¶¶ 33, 41, 55, 80), and preventing Amazon and Amazon's customers from doing business with Plaintiff, (*id.* ¶ 98). Defendants also sought to suppress competition, ensure the suspension of Plaintiff's marketplace listings, control pricing, and eliminate fair competition. (*Id.* ¶¶ 65, 114).

Plaintiffs contend that Defendants have used these "same tactics, namely filing false intellectual property complaints," against other Amazon sellers in "an ongoing and continuous" and "coordinated effort to preclude select third parties, including Plaintiff, from reselling genuine Skullcandy Products on online marketplaces." (*Id.* ¶¶ 32, 54, 61.) Defendants seek to increase their "profits by controlling the distribution and pricing of products, including Skullcandy Products, through unlawful means." (*Id.* ¶ 31.)

To date, Skullcandy has not retracted the Amazon Reports. (*Id.* ¶ 57.) Plaintiff alleges that it is in jeopardy of permanent suspension of all selling privileges, "which will cause extraordinary, irreparable, and untold damage on a business that is in the virtually exclusive business of selling products on e-commerce platforms." (*Id.* ¶ 76.) Unless Defendants are enjoined from submitting additional infringement complaints to Amazon regarding Plaintiff's resale of Skullcandy Products, Plaintiff will continue to be harmed. (*Id.* ¶ 103.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must construe [the Complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)); *see also Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020)

(quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570).  "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Matson*, 631 F.3d at 63); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Roe*, 91 F.4th at 651 ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend 'to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" (quoting *Iqbal*, 556 U.S. at 678)).

     **b.  Plaintiff's trade libel claim**

     Defendants argue that Plaintiff's trade libel claim should be dismissed because Plaintiff has not "adequately alleged" (1) that Defendants made a false statement because the Amazon Reports are "non-actionable opinions" that cannot form the basis of a trade libel claim, (Defs.' Mem. 10; Defs.' Reply 5); (2) that Defendants acted with malice because Plaintiff relies on "conclusory and unsupported allegations" made "on information and belief" that it "purportedly 'knew' that [Defendants'] products were 'not counterfeit,'" (Defs.' Mem. 10–11; Defs.' Reply 6), the Complaint has no "factual support for the alleged 'coordinated effort' by [Defendants] to preclude third parties from selling its products," (Defs.' Reply 6), the "allegation that 'Defendants acted with malice or with reckless disregard for the truth' merely parrots an element

of its claim," (*id.*), and the fact that Skullcandy's General Counsel did not conduct a test purchase, as Plaintiff alleges, does not mean that he or Defendants "knew the Amazon [Reports] were either false or probably false," (*id.*); and (3) special damages because Plaintiff failed to itemize damages and identify the customers it allegedly lost, (*id.* at 6–7; Defs.' Mem. 11–12).

Plaintiff contends that Defendants' arguments are unavailing because (1) the Amazon Reports "falsely claiming that the Skullcandy Products sold by [Plaintiff] through its storefront are not mere opinions but rather can form the basis of defamation and trade libel claims," (Pl.'s Opp'n 9); (2) Plaintiff "sufficiently alleges malice" because Plaintiff alleges in the Complaint "that the Skullcandy Products were counterfeit[,] were knowingly false[,] and made in bad faith" by alleging that, among other allegations, Defendants "did not conduct a test purchase," "ha[d] no conclusive evidence that the alleged product is in fact counterfeit," and "knew that the products may be authentic products that were merely 'improperly diverted,' — i.e., sold in a sales channel that it wishes it could control," (*id.* at 9 (third alteration in original) (quoting Compl. ¶ 43)); and (3) it alleges special damages by identifying "specific and permanent impairments to [Plaintiff's] business" including that "Plaintiff's product listings identified in the Amazon [Reports] were suspended, resulting in an immediate loss of revenue, and that Plaintiff's performance metrics were irreparably damaged, and have caused Plaintiff to lose the "buy box" going forward," (*id.* at 10 (citing Compl. ¶¶ 55, 58, 66–69).)  Plaintiff also argues that "since the filing of the Complaint, Amazon suspended [Plaintiff's] entire Amazon account, resulting in a loss of all selling privileges."  (*Id.* at 10.)  Plaintiff further argues that it "is available to amend the Complaint to include these additional factual allegations."  (*Id.* at 10 n.2.)

"To recover for product disparagement [also known as trade libel] under New York law, plaintiffs must show defendants' publication of a defamatory statement directed at the quality of their goods, which statement caused 'special damages.'"  *Bilinski v. Keith Haring Found., Inc.*,

632 F. App'x 637, 641 (2d Cir. 2015) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002)); *Boule v. Hutton*, 328 F.3d 84, 94 n.8 (2d Cir. 2003) (explaining that under New York law "statements disparaging another's product were called 'trade libel,' another's business called 'injurious falsehood,' and another's title called 'slander of title'" (quoting *Payrolls & Tabulating, Inc. v. Sperry Rand Corp.*, 257 N.Y.S.2d 884, 887 (App. Div. 1965))); *Sweigert v. Goodman*, No. 23-CV-5875, 2024 WL 4493768, at *6 (S.D.N.Y. Oct. 11, 2024) ("[U]nder New York law, '[t]rade libel or product disparagement is an action to recover for words or conduct which tend to disparage or negatively reflect upon the condition, value or quality of a product or property.'" (quoting *Angio-Med. Corp. v. Eli Lilly & Co.*, 720 F. Supp. 269, 274 (S.D.N.Y. 1989))), *reconsideration denied*, 2024 WL 5047302 (S.D.N.Y. Dec. 9, 2024); *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 259–60 (S.D.N.Y. 2023) ("Under New York law, injurious falsehood is also referred to as 'trade libel, product disparagement, and other variations thereof,' and is a 'tort separate and distinct from the tort of defamation.'" (quoting *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006))); *Zaret v. Bonsey*, No. 22-CV-7109, 2023 WL 6317956, at *3 (S.D.N.Y. Sept. 28, 2023) ("To state a claim [for trade libel], [a] [p]laintiff 'must adequately plead (1) falsity of the statement, (2) publication to a third person, (3) malice (express or implied), and (4) special damages.'" (quoting *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016))), *reconsideration denied*, 2023 WL 7627806 (S.D.N.Y. Nov. 14, 2023). Special damages are defined as the "loss of something having economic or pecuniary value." *Bilinski*, 632 F. App'x at 641 (quoting *Albert v. Loksen*, 239 F. 3d 256, 271 (2d Cir. 2001)). "Where loss of customers constitutes the alleged special damages, the individuals 'who ceased to be customers, or who refused to purchase, must be named' and the exact damages itemized." *Fashion Boutique*, 314 F.3d at 59 (quoting *Drug Rsch. Corp. v. Curtis Publ'g Co.*, 7

N.Y.2d 435, 441 (1960)); *see also Bilinski*, 632 F. App'x at 641 (same); *Conflict Intl., Inc. v. Komorek*, No. 23-CV-2165, 2024 WL 1347577, at *15 (S.D.N.Y. Mar. 29, 2024) (same); *Drug Rsch. Corp.*, 7 N.Y.2d at 441 (holding that if lost customers "are not named, no cause of action is stated" and that "round figures, with no attempt at itemization, must be deemed to be a representation of general damages" (quoting *Reps.' Ass'n of Am. v. Sun Prtg. & Publ'g Ass'n*, 186 N.Y. 437, 442 (1906))).

Plaintiff has failed to state a claim for trade libel because it has not pleaded special damages with particularity. Plaintiff alleges pecuniary harm from Defendants filing allegedly false Amazon Reports of infringement that caused Amazon to suspend its listings, including "lost dealings," (Compl. ¶ 100), "direct and immediate loss of revenue," (*id.* ¶ 101; *see id.* ¶ 58), and damaged performance metrics that caused a loss of the "buy box" on many of its product listings, (*id.* ¶ 69). However, Plaintiff has failed to plead the names of any specific customers that it lost from the suspension of the product listings or the loss of the buy box nor has it alleged a specific itemized dollar amount of the loss in revenue. (*Id.* ¶ 101.) *See Covet & Mane, LLC v. Invisible Bead Extensions, LLC*, No. 21-CV-7740, 2023 WL 2919554, at *15 (S.D.N.Y. Mar. 23, 2023) (dismissing trade libel claim where plaintiff alleged special damages in the form of lost sales due to product disparagement but failed to "provide a dollar amount or any specific information about the losses sustained" or identify the lost customers), *report and recommendation adopted*, 2023 WL 6066168 (S.D.N.Y. Sept. 18, 2023); *CT Espresso LLC v. Lavazza Premium Coffees Corp.*, No. 22-CV-377, 2022 WL 4538339, at *4 (S.D.N.Y. Sept. 28, 2022) (dismissing trade libel claim in part because allegations that reseller "lost $25,000 in expired inventory and $300,000 in lost sales as a result of the Amazon [c]omplaints" were round figures that did not itemize losses and failed to "name[] a single customer who stopped purchasing or decided not to purchase its products"), *on reconsideration of other grounds*, 2022 WL 17156759 (S.D.N.

Nov. 22, 2022); *Eminah Props. LLC v. Energizer Holdings, Inc.*, 531 F. Supp. 3d 593, 609 (E.D.N.Y. 2021) (dismissing trade libel claim because plaintiff's allegations that its listing content was removed and it was at risk of account suspension did not sufficiently allege special damages); *see also Bilinski*, 632 F. App'x at 641 (affirming dismissal of trade libel claim for failure to plead the special damages because complaint did not name the customer that allegedly "back[ed] out" of buying plaintiff's artwork); *Sandler v. Simoes*, 609 F. Supp. 2d 293, 302 (E.D.N.Y. 2009) ("A party alleging trade libel must establish that the communication was a substantial factor in inducing others not to conduct business with it and, unlike libel *per se*, must adduce proof of special damages in the form of lost dealings.").

Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's trade libel claim.

### c.    Plaintiff's defamation *per se* claim

Defendants argue that Plaintiff's defamation *per se* claim should be dismissed because the Amazon Reports are "a textbook example of a statement of pure opinion." (Defs.' Mem. 8–9.) In support, Defendants contend that they told Amazon "precisely why [Skullcandy] believed [Plaintiff's] products were counterfeit — *i.e.*, because those products were not listed in [Skullcandy's] catalog — and did not imply that this assessment was based on any facts that it did not disclose to Amazon." (Defs.' Mem. 8–9; Defs.' Reply 4–5.)

Plaintiff contends that Defendants' argument is "without merit" because Defendants asserted in the Amazon Reports as an "unequivocal statement of fact" that Plaintiff "is listing a product bearing the Skullcandy trademark" that is "not a product in [its] brand's catalogue." (Pl.'s Opp'n 6.) Plaintiff argues that, even if the Amazon Reports could be construed as statements of opinion, they would be actionable because they imply that Defendants knew certain facts that they did not disclose to their audience. (*Id.* at 6.) Moreover, Plaintiff contends

that the Amazon Reports "wrongfully" accuse it of trademark infringement and that Defendants

filed the reports "with knowledge of their falsity and with knowledge that Amazon would act on

them by preventing [Plaintiff] from selling Skullcandy Products." (*Id.* at 8.) Plaintiff also argues

that the Amazon Reports "are sufficient, as a matter of law, to sustain a defamation claim,"

because Plaintiff has alleged that Defendants "filed reports with Amazon wrongfully accusing

[Plaintiff] of trademark infringement" and "pleads that [Defendants] had a 'good faith belief' for

submitting the [Amazon] [R]eports, which were also 'signed under penalty of perjury.'" (*Id.*

(quoting Compl. ¶¶ 44–46).) Plaintiff contends that courts have found that an infringement

complaint could serve as the basis of a defamation claim under "identical circumstances" where

the infringement complaint was filed under penalty of perjury. (*See id.* at 7–8.)

        "Defamation . . . is the invasion of the interest in a reputation and good name," *Albert*,

239 F.3d at 265 (quoting *Hogan v. Herald Co.*, 446 N.Y.S.2d 836, 839 (App. Div. 1982), *aff'd*,

58 N.Y.2d 630 (1982)), and "consist[s] of the twin torts of libel and slander," *Farrakhan v. Anti-*

*Defamation League*, No. 24-1237, 2025 WL 24066, at *2 n.1 (2d Cir. Jan. 3, 2025) (alteration in

original) (quoting *Albert*, 239 F.3d at 265); *Ballentine v. Google LLC*, No. 24-CV-4699, 2024

WL 4855215, at *3 (S.D.N.Y. Nov. 21, 2024) ("Defamation, consisting of the twin torts of libel

and slander, is the invasion of the interest in a reputation and good name." (quoting *Albert*, 239

F.3d at 265)). "Generally, spoken defamatory words are slander; written defamatory words are

libel." *Albert*, 239 F.3d at 265; *see Ballentine*, 2024 WL 4855215, at *3 (same); *Biro v. Conde*

*Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) ("Defamation is the injury to one's reputation

either by written expression, which is libel, or by oral expression, which is slander." (quoting

*Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000))); *see also Farrakhan*, 2025 WL

24066, at *2 n.1 ("To be precise, because plaintiffs challenge written statements, their claims are

for libel." (citing *Albert*, 239 F.3d at 265)).

"Under New York law[,] a defamation plaintiff must establish five elements: (1) a
. . . defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3)
fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability."
*Carroll v. Trump*, 124 F.4th 140, 159 n.9 (2d Cir. 2024) (quoting *Palin v. N.Y. Times Co.*, 940
F.3d 804, 809 (2d Cir. 2019)); *see also Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, No. 22-
1834, 2024 WL 959619, at *4 (2d Cir. Mar. 6, 2024) (same); *Celle v. Filipino Rep. Enters. Inc.*,
209 F.3d 163, 176 (2d Cir. 2000) (same). A defamatory statement is one that "tends to expose
the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of
[them] in the minds of right-thinking persons, and . . . deprive[s] [them] of their friendly
intercourse in society." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting
*Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 41 (App. Div. 2014)); *see also Biro*, 883 F.
Supp. 2d at 456 ("A defamatory statement is one that exposes the plaintiff 'to public hatred,
shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or
disgrace, or . . . induces an evil opinion of one in the minds of right-thinking persons, and . . .
deprives one of . . . confidence and friendly intercourse in society.'" (quoting *Karedes v.
Ackerley Grp., Inc.*, 423 F.3d 107, 113 (2d Cir. 2005))).

"A statement that tends to injure another in his or her trade, business or profession is
defamatory per se." *Pantheon Props., Inc. v. Hous.*, No. 20-CV-3241, 2021 WL 4523619, at *3
(S.D.N.Y. Sept. 30, 2021) (quoting *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d
405, 411 (S.D.N.Y. 2009)); *see Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001) ("A
written statement that 'charges a person with the commission of a crime' or 'tends to disparage a
person in the way of his office profession or trade' is libel *per se*." (citation omitted)). "To
'injure another in his or her trade, business or profession,' the statement must 'be targeted at the
specific standards of performance relevant to the plaintiff's business and must impute conduct

that is "of a kind incompatible with the proper conduct of the business, trade, profession or office itself."'" *Staley v. Smart*, No. 23-CV-3546, 2024 WL 3835518, at *12 (S.D.N.Y. July 30, 2024) (quoting *Pure Power Boot Camp Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011)), *report and recommendation adopted*, No. 23-CV-3546, 2024 WL 3835225 (S.D.N.Y. Aug. 14, 2024); *Conti v. Doe*, No. 17-CV-9268, 2019 WL 952281, at *7 (S.D.N.Y. Feb. 27, 2019) ("To be actionable as words that tend to injure another in his or her profession, the challenged statement must be more than a general reflection upon [the plaintiff's] character or qualities.  Rather, the statement must reflect on her performance or be incompatible with the proper conduct of her business." (quoting *Golub v. Enquirer/Star Grp., Inc.*, 89 N.Y.2d 1074, 1076 (1997))).  "The statement must 'impute[ ] incompetence, incapacity or unfitness in the performance of one's profession,' amounting 'to an attack on plaintiff's professional ability' and constitute 'more than a general reflection upon [plaintiff's] character or qualities.'" *Staley*, 2024 WL 3835518, at *12 (alterations in original) (quoting *Clemente v. Impastato*, 711 N.Y.S.2d 71, 74 (App. Div. 2000)); *Radiation Oncology Servs. of Cent. N.Y., P.C. v. Our Lady of Lourdes Mem'l Hosp., Inc.*, 200 N.Y.S.3d 521, 530 (App. Div. 2023) (quoting same).

        "A plaintiff in a libel action must identify a plausible defamatory meaning of the challenged statement or publication." *Celle*, 209 F.3d at 178.  "If the statement is susceptible of only one meaning the court 'must determine, as a matter of law, whether that one meaning is defamatory.'" *Id.* (quoting *Davis v. Ross*, 754 F.2d 80, 82 (2d Cir. 1985)); *see Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997) ("[A] threshold issue for resolution by the court is whether the statement alleged to have caused plaintiff an injury is reasonably susceptible to the defamatory meaning imputed to it."  (citing *James v. Gannett Co., Inc.*, 40 N.Y.2d 415, 419 (1976)).  "If the words are reasonably susceptible of multiple meanings, some of which are not defamatory, 'it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to

determine in what sense the words were used and understood.'"  *Celle*, 209 F.3d at 178 (quoting

*Davis*, 754 F.2d at 83); *see Electra v. 59 Murray Enters., Inc.*, 987 F.3d 233, 259 (2d Cir. 2021)

(quoting same).

"[C]ourts must give the disputed language a fair reading in the context of the *publication*

*as a whole.*"  *Cooper v. Franklin Templeton Invs.*, No. 22-2763, 2023 WL 3882977, at *3 (2d

Cir. June 8, 2023) (quoting *Celle*, 209 F.3d at 177).  "Challenged statements are not to be read in

isolation, but must be perused as the average reader would against the whole apparent scope and

intent of the writing."  *Id.* (quoting *Celle*, 209 F.3d at 177).  "[C]ourts are not to 'strain' to

interpret such writings 'in their mildest and most inoffensive sense to hold them nonlibelous.'"

*Celle*, 209 F.3d at 177 (quoting *Nov. v. Time Inc.*, 13 N.Y.2d 175, 178 (1963)).  "[T]he words are

to be construed not with the close precision expected from lawyers and judges but as they would

be read and understood *by the public to which they are addressed*."  *Valley Elecs. AG v. Polis*,

No. 21-2108, 2022 WL 893674, at *2 (2d Cir. Mar. 28, 2022) (quoting *Celle*, 209 F.3d at 177).

"[T]ruth is a complete defense to a defamation claim."  *Cicel*, 2024 WL 959619, at *4

(alteration in original) (quoting *Birkenfeld v. UBS AG*, 100 N.Y.S.3d 23, 24 (App. Div. 2019));

*Cain v. Atelier Esthetique Inst. of Esthetics Inc.*, 733 F. App'x 8, 11 (2d Cir. 2018) ("[T]ruth

provides a complete defense to defamation claims."  (quoting *Dillon v. City of New York*, 704

N.Y.S.2d 1, 6 (App. Div. 1999))); *see also Crowley v. Billboard Mag.*, 576 F. Supp. 3d 132, 148

(S.D.N.Y. 2021) ("[S]tatements that are substantially true cannot be defamatory."); *Reus v. ETC*

*Hous. Corp.*, 164 N.Y.S.3d 692, 697 (App. Div. 2022) ("A defamation action is subject to an

absolute defense that the alleged defamatory statements are substantially true."  (quoting *Proskin*

*v. Hearst Corp.*, 787 N.Y.S.2d 506, 507 (2005))).  "In New York, a statement need not be

completely true, but can be substantially true, as when the overall 'gist or substance of the

challenged statement' is true."  *Chau v. Lewis*, 771 F.3d 118, 130 (2d Cir. 2014) (emphasis

omitted) (quoting *Printers II, Inc. v. Pros. Publ'g, Inc.*, 784 F.2d 141, 146 (2d Cir. 1986)); *see Cain*, 733 Fed. App'x. at 11 (quoting same); *see also Olivet Univ. v. Newsweek Digit. LLC*, No. 24-1473, 2024 WL 5001841, at *3 (2d Cir. Dec. 6, 2024) ("'Substantial truth' is the standard by which New York law . . . determines an allegedly defamatory statement to be true or false. . . . [I]f an allegedly defamatory statement is 'substantially true,' a claim of libel is legally insufficient and should be dismissed." (second and third alterations in original) (quoting *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 242 (2d Cir. 2017))); *Baiocco v. AEP RSD Invs., LLC*, No. 21-2475, 2022 WL 2902081, at *4 (2d Cir. July 22, 2022) ("A statement is 'substantially true' and unactionable 'if the statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" (quoting *Tannerite Sports*, 864 F.3d at 242)); *Esses v. Rosen*, No. 24-CV-3605, 2024 WL 4494086, at *3 (E.D.N.Y. Oct. 15, 2024) (quoting same); *White v. Barry*, 288 N.Y. 37, 39 (1942) ("To constitute a complete defense the justification was bound to be as broad as the actionable significance of the words. 'A workable test is whether the libel as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'" (quoting *Fleckenstein v. Friedman*, 266 N.Y. 19, 23 (1934)); *Moorhouse v. Standard, N.Y.*, 997 N.Y.S.2d 127, 135 (App. Div. 2014) ("Because the falsity of the statement is an element of the defamation claim, the statement's truth or substantial truth is an absolute defense." (quoting *Stepanov*, 987 N.Y.S.2d at 42))).

### i.    The Amazon Reports have a defamatory meaning

As a "threshold issue," *Levin*, 119 F.3d at 195, the Court finds that the Amazon Reports are susceptible to a defamatory meaning. Plaintiff has pleaded that the Amazon Reports accused Plaintiff of the wrongful acts of selling counterfeit goods and trademark infringement. (*See, e.g.*, Compl. ¶ 41.) These allegations are defamatory *per se* because they "tend[] to disparage"

Plaintiff's "office profession or trade" as a third party reseller. *Meloff*, 240 F.3d at 145; *Conti*, 2019 WL 952281, at *7 (explaining that a defamatory *per se* "statement must reflect on [a plaintiff's] performance or be incompatible with the proper conduct of her business" (quoting *Golub*, 89 N.Y.2d at 1076)); *see Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441, 2022 WL 9447259, at *4 (E.D.N.Y. Oct. 14, 2022) ("Accusations that plaintiff sold counterfeit goods, whether made orally or in writing, would be defamatory *per se*." (internal quotation marks omitted) (quoting *Beauty Beauty USA, Inc. v. Chin Hong Luo*, No. 11-CV-5349, 2011 WL 4952658, at *1 (S.D.N.Y. Oct. 13, 2011))).  Amazon and customers expect Plaintiff's Skullcandy Products to be genuine resales.  Based on Amazon's alleged approach to handling infringement complaints and its suspension of the reported Skullcandy Product listings, the Amazon Reports filed by Defendants did impede Plaintiff's ability to maintain product listings on Amazon, the world's largest online retailer.  (*See* Compl. ¶¶ 20–23, 38, 59.)  *See Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 198 (S.D.N.Y. 2023) (concluding that allegations of a defendant's submission of a false infringement report to eBay were "sufficient for showing injury to Plaintiffs' business reputation" and stating a claim of defamation *per se*); *CT Espresso LLC v. Lavazza Premium Coffees Corp.*, No. 22-CV-377, 2022 WL 17156759, at *2 (S.D.N.Y. Nov. 22, 2022) (holding that defendants' infringement "complaints to Amazon stating that [plaintiff] was selling 'counterfeit'" versions of defendants' products were defamatory *per se*); *Dio Magna LLC v. Pongnon*, No. 21-CV-4671, 2022 WL 22911393, at *1, 9 (E.D.N.Y. Sept. 26, 2022) (holding that statements falsely accusing plaintiff of deceiving its customers by selling shea butter as gres cacao oil stated a defamatory *per se* claim); *Eminah Props.*, 531 F. Supp. 3d at 608 (finding defendant's reports to eBay that plaintiff was committing trademark infringement were defamatory in part because "a statement about a business is defamatory if it imputes to the business some form of fraud or misconduct or a general unfitness, incapacity, or inability to

perform its duties" (brackets and citation omitted)).

Defendants have not raised any arguments that dispute or challenge that Plaintiff has adequately pleaded the elements of a defamation claim, including that (1) the Amazon Reports constituted defamatory statements "of and concerning" Plaintiff's business, (*see* Compl. ¶¶ 80, 82–83); (2) Defendants published the statements to a third party, Amazon, (*see id.* ¶ 80); (3) Defendants were at fault because they were at least negligent in filing the Amazon Reports when they knew or should have known that Plaintiff was selling genuine Skullcandy Products, (*see id.* ¶ 85); (4) the Amazon Reports were false because Plaintiff sold genuine and unaltered products, (*see id.* ¶¶ 82–83, 86); and (5) Plaintiff has suffered injury "by defamation per se or by special harm," (*id.* ¶¶ 90–92). *Carroll*, 124 F.4th at 159 n.9. (*See* Defs.' Mem. 8–10; Defs.' Reply 4–5.) Regarding the final element for damages, the Court finds that Plaintiff has failed to plead special damages but has pleaded defamation *per se*.[7] *See Carroll*, 124 F.4th at 159 n.9 ("Under New York law[,] a defamation plaintiff must establish . . . special damages or per se actionability."). Plaintiff alleges that the Amazon Reports caused Amazon to suspend Plaintiff's selling privileges for Skullcandy Products, caused damage to Plaintiff's relationship with Amazon and its customers, and caused Plaintiff to lose sales of Skullcandy Products and other products because Amazon and customers avoided purchasing Plaintiff's products. (Compl. ¶¶ 83, 90–92.) These allegations fail to plead special damages because Plaintiff has not named any specific customers

---

[7] Although Defendants have not argued that Plaintiff failed to plead special damages for its defamation claim, Defendants do argue that Plaintiff has failed to state special damages for its trade libel claim. *See infra* Section II.c. Because the pecuniary harm that Plaintiff alleges for its trade libel claim, including "lost dealings" and "direct and immediate loss in revenue," (Compl. ¶¶ 100–01), overlaps with some of the injury that Plaintiff alleges for its defamation claim, including lost customers, revenue, and sales, (*id.* ¶¶ 83–84, 92), the Court considers Plaintiff's arguments that it has stated special damages for its trade libel claims in determining whether Plaintiff has pleaded special damages for its defamation claim.

that it lost nor has it quantified the alleged harm as an itemized dollar amount. However, because the Amazon Reports constitute defamatory *per se* statements, Plaintiff need not plead special damages to state a claim.[8]

### ii.    The Amazon Reports do not constitute opinion

Defendants argue that the Amazon Reports constitute nonactionable opinion because they "do not imply any unknown facts" and "clearly state[] that the factual basis for [their] opinion that [Plaintiff's] listed products were counterfeit" in that the "products bore [Defendants'] trademarks" and the "product identification numbers that [Plaintiff] listed on its digital storefront did not match any product identification numbers in Skullcandy's brand catalog." (Defs.' Reply 4–5; Defs.' Mem. 8–9.) Defendants also contend that "each of the cases on which [Plaintiff] relies are inapposite because none dealt with complaints like the instant matter, where [Defendants] explicitly spelled out the facts on which [their] opinion [were] based." (Defs.' Reply 5.)

Plaintiff argues that the Amazon Reports are statements of fact and that even if they could be construed as statements of opinion, they would be actionable because they imply that Defendants know certain facts that they did not disclose to their audience. (Pl.'s Opp'n 6.)

---

[8]    While Plaintiff is not required to plead special damages to state a defamation *per se* claim, Plaintiff is required to plead special damages with particularity to recover special damages. *See Glob. Auto, Inc. v. Hitrinov*, No. 13-CV-2479, 2021 WL 7367078, at *9–10 (E.D.N.Y. Aug. 20, 2021) (explaining that even in defamation *per se* cases, "[s]pecial damages must be fully and accurately stated, with sufficient particularity to identify actual losses" and finding that the plaintiffs were "only entitled to recover general damages, which [were] presumed as part of their successful libel *per se* claim" (citation and internal quotation marks omitted)); *Fischer v. OBG Cameron Banfill LLP*, No. 08-CV-7707, 2010 WL 3733882, at *2 (S.D.N.Y. Sept. 24, 2010) (explaining that "[t]he presumption of general damages in libel *per se* cases . . . merely means that special damages need not be pleaded for the *per se* claim to be actionable"); *Segel v. Barnett*, 226 N.Y.S.2d 141, 143 (Sup. Ct. 1962) ("Where a statement uttered is slanderous per se, the law presumes general damages to have been sustained, and it is not necessary, in order to justify a recovery on that ground, that the damages should have been specifically pleaded or proved. But when it is sought to recover special damages the same must not only be pleaded but proved." (citation omitted)).

Plaintiff also contends that "Defendant cannot hide behind the claim that its false accusations were 'pure opinion because they were "inferences" from . . . specific factual information." (*Id.* at 8 (citation omitted).)

"Ordinarily, opinion statements have absolute protection, and are non-actionable since they are 'not capable of being objectively characterized as true or false.'" *Mestecky v. N.Y.C. Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019) (quoting *Celle*, 209 F.3d at 178); *see LaNasa v. Stiene*, No. 24-1325, 2025 WL 893456, at *2 (2d Cir. Mar. 24, 2025) ("[T]he New York Constitution provides for absolute protection of opinions." (alteration in original) (quoting *Celle*, 209 F.3d at 178)). "Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Crowley*, 576 F. Supp. 3d at 148 (quoting *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008)). "Distinguishing between assertions of fact and nonactionable expressions of opinion has often proved a difficult task." *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995); *see also Sheindlin v. Brady*, 597 F. Supp. 3d 607, 625 (S.D.N.Y. 2022) (same). "[T]he determination of whether a statement is opinion or rhetorical hyperbole as opposed to a factual representation is a question of law for the court." *Rapaport v. Barstool Sports Inc.*, No. 22-2080, 2024 WL 88636, at *2 (2d Cir. Jan. 9, 2024) (quoting *Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985)). In distinguishing between opinion and fact, courts in New York generally consider:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Rapaport*, 2024 WL 88636, at *2 (quoting *Brian*, 87 N.Y.2d at 51); *see Stiene*, 2025 WL 893456, at *2 (listing the considerations as four factors that New York courts use to

"differentiat[e] statements of protected opinion from those asserting or implying actionable facts": (1) "an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous"; (2) "a determination of whether the statement is capable of being objectively characterized as true or false"; (3) "an examination of the full context of the communication in which the statement appears"; and (4) "a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact." (quoting *Celle*, 209 F.3d at 178)); *see Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292 (1986) (same). "[A] statement of fact will not be transformed into a statement of opinion solely by use of language expressing uncertainty or qualification." *Elias*, 872 F.3d at 111 (citing *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 154 (1993)); *see Goldfarb v. Channel One Russ.*, 663 F. Supp. 3d 280, 305 (S.D.N.Y. 2023) ("[A] defamatory statement of fact cannot be immunized by pairing it with 'I believe.'" (internal quotation marks omitted) (quoting *Thomas H. v. Paul B.*, 18 N.Y.3d 580, 585 (2012))); *Gross*, 82 N.Y.2d at 155 (explaining that "if the statement 'John is a thief' is actionable when considered in its applicable context, the statement '*I believe* John is a thief' would be equally actionable when placed in precisely the same context"). "Ultimately, '[t]he dispositive inquiry . . . is whether a reasonable reader could have concluded that [the statements were] conveying facts about the plaintiff.'" *Rapaport*, 2024 WL 88636, at *2 (alterations in original) (quoting *Gross*, 82 N.Y.2d at 152).

"However, '[t]he analysis does not end . . . when a challenged statement is found to be an opinion.'" *Stiene*, 2025 WL 893456, at *2 (alterations in original) (quoting *Chau v. Lewis*, 935 F. Supp. 2d 644, 658 (S.D.N.Y. 2013), *aff'd*, 771 F.3d 118). Statements of opinion "may yet be actionable if they imply that the speaker's opinion is based on the speaker's knowledge of facts

24

that are not disclosed to the reader," *Elias*, 872 F.3d at 111 (quoting *Levin*, 119 F.3d at 197),

"because a reasonable listener or reader would infer that 'the speaker [or writer] knows certain

facts, unknown to [the] audience, which support [the] opinion and are detrimental to the person

[toward] whom [the communication is directed],'" *Gross*, 82 N.Y.2d at 153–54 (alterations in

original) (quoting *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 290 (1986)).  *See Levin*, 119 F.3d at

196 (noting that the Supreme Court has "explained that the United States Constitution offers no

wholesale protection for so-called 'expressions of opinion' if those expressions imply assertions

of objective fact" (quoting *Milkovich v. Lorain J.*, 497 U.S. 1, 18 (1990))).  In such an instance,

the statement is "mixed opinion" and the "[t]he actionable element of a 'mixed opinion' is not

the false opinion itself — it is the implication that the speaker knows certain facts, unknown to

his audience, which support his opinion and are detrimental to the person about whom he is

speaking." *Stiene*, 2025 WL 893456, at *2 (quoting *Chau*, 935 F. Supp. 2d at 658–59).  In

contrast, a pure opinion is a "statement of opinion which is accompanied by a recitation of the

facts upon which it is based" or "does not imply that it is based upon undisclosed facts" and is

"not actionable." *Id.* (quoting *Chau*, 935 F. Supp. 2d at 658–59).  "[A] proffered hypothesis that

is offered after a full recitation of the facts on which it is based is readily understood by the

audience as conjecture." *Rapaport*, 2024 WL 88636, at *4 (quoting *Gross*, 82 N.Y.2d at 154).

"When the defendant's statements, read in context, are readily understood as conjecture,

hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact."

*Levin*, 119 F.3d at 197 (citing *Gross*, 82 N.Y.2d at 155).  Where "the predicate facts are

disclosed but are false, such that the disparity between the stated facts and the truth would cause

a reader to question the opinion's validity, the opinion may be an actionable defamatory

opinion." *Enigma Software*, 194 F. Supp. 3d at 281 (internal quotation marks and brackets

omitted) (quoting *Silsdorf v. Levine*, 59 N.Y.2d 8, 15–16 (1983)); *see Moraes v. White*, 571 F.

Supp. 3d 77, 96–97 (S.D.N.Y. 2021) (quoting same); *Jacobus v. Trump*, 51 N.Y.S.3d 330, 337 (Sup. Ct. 2017), (quoting same), *aff'd*, 64 N.Y.S.3d 889 (App. Div. 2017); *see also LoanStreet, Inc. v. Troia*, No. 21-CV-6166, 2022 WL 3544170, at *4 (S.D.N.Y. Aug. 17, 2022) ("[I]f the facts upon which an opinion is based are set forth for the reader, and the plaintiff alleges that both the opinion and the facts upon which it is based are false, the opinion <u>and</u> facts may form the basis of the defamation claim.").  "[O]pinions based on false facts are actionable . . . against a defendant who had knowledge of the falsity or probable falsity of the underlying facts." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 114 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Davis*, 754 F.2d at 86); *see IME Watchdog, Inc. v. Gelardi*, No. 22-CV-1032, 2024 WL 4350498, at *17 (E.D.N.Y. Sept. 30, 2024) ("[O]pinions based on false facts are actionable only against a defendant who had knowledge of the falsity or probable falsity of the underlying facts." (alteration in original) (quoting *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir. 1977))).

The Amazon Reports were statements of fact not opinion.  First, each report "has a precise meaning which is readily understood" by its intended audience, Amazon, that the Skullcandy Product listings are counterfeit.  *Rapaport*, 2024 WL 88636, at *2.  Each Amazon Report describes Plaintiff's product listing, indicates that the report is one of "trademark: counterfeit" infringement, and notes that: "This Seller is listing a product bearing Skullcandy trademarks.  It is not a product that exists in our brand's catalog.  Please have this listing removed from the US marketplace."  (Kepke Ex. 1; Kepke Ex. 2.)  Second, the authenticity of the products and whether they are in fact infringing on Skullcandy's marks is "capable of being proven true or false."  *Rapaport*, 2024 WL 88636, at *2.  Third, in the "full context of the communication," *id.*, Skullcandy, as the brand owner, and John Doe submitted two reports of trademark noninfringement to Amazon and asked Amazon to remove the products.  Plaintiff alleges that Amazon has an express policy of not investigating reports and acting on them in the

absence of proof to the contrary, (Compl. ¶ 38), and John Doe certified when submitting the report that it had "a good faith belief" that the product listings it reported "violate[d] [its] rights" and "declare[d] under penalty of perjury" that its statement "was correct and accurate," (*id.* ¶¶ 44, 46). These allegations sufficiently establish that in the context and circumstances of the Amazon Reports, the reader, Amazon, would accept and rely on the Amazon Reports as fact. *See Rapaport*, 2024 WL 88636, at *2 ("The dispositive inquiry . . . is whether a reasonable reader could have concluded that [the statements were] conveying facts about the plaintiff." (quoting *Gross*, 82 N.Y.2d at 152)).

Defendants' argument that the Amazon Reports constitute opinion because they disclose the predicate facts misstates New York law. (Defs.' Mem. 8; Defs.' Reply 4.) Defendants explain the law as follows, "In making [the] legal determination" of "[w]hether a statement is one of fact or opinion," "courts are guided by the principle that a statement of opinion is one which is either accompanied by a recitation of the facts upon which it is based" or "does not imply that it is based on undisclosed facts." (Defs.' Mem. 8 (internal quotation marks omitted) (citing *CDC Newburgh Inc. v. STM Bags, LLC*, 682 F. Supp. 3d 205, 221 (S.D.N.Y. 2023) (quoting *Steinhilber*, 68 N.Y.2d at 289)); *see* Defs.' Reply 4.) The quote on which Defendants rely from *CDC Newburgh Inc. v. STM Bags, LLC* is itself an incomplete quotation of the Court of Appeals decision in *Steinhilber v. Alphonse*. The complete statements from *Steinhilber* are that, "*A 'pure opinion' is a statement of opinion* which is accompanied by a recitation of the facts upon which it is based. *An opinion not accompanied by such a factual recitation may, nevertheless, be 'pure opinion'* if it does not imply that it is based upon undisclosed facts." 68 N.Y.2d at 289 (emphasis added); *see Stiene*, 2025 WL 893456, at *2 (quoting same). The Court of Appeals also explained that "[a]n expression of pure opinion is not actionable." *Id.* In the same opinion, the Court of Appeals emphasized "four factors which should generally be

27

considered in differentiating between fact and opinion."[9] *Id.* at 292.  The four factors have since

been distilled into the three factors that this Court applied above in determining that the Amazon

Reports were statements of fact and that *CDC Newburgh* quoted and Defendants failed to consider:

> To distinguish statements of fact from opinion, New York courts
> may consider the following three factors: (1) whether the specific
> language in issue has a precise meaning which is readily understood;
> (2) whether the statements are capable of being proven true or false;
> and (3) whether either the full context of the communication in
> which the statement appears or the broader social context and
> surrounding circumstances are such as to signal readers or listeners
> that what is being read or heard is likely to be opinion, not fact.
> Moreover, "[w]hen the defendant's statements, read in context,
> are readily understood as conjecture, hypothesis, or speculation, this
> signals the reader that what is said is opinion, and not fact."

*CDC Newburgh*, 692 F. Supp. 3d at 221 (quoting *Levin*, 119 F.3d at 197 (citation omitted)).

Thus, the *Steinhilber* court set forth factors that courts may consider to distinguish a statement of

fact from opinion and explained that a full recitation of facts is a basis for determining whether a

statement that has already been deemed an opinion is actionable.  *See Stiene*, 2025 WL 893456,

at *2 (explaining that "when a challenged statement is found to be an opinion," the court "must

then decide whether the opinion is a 'pure opinion'" that "is not actionable" or a "mixed

opinion" that "is actionable" (quoting *Chau*, 935 F. Supp. 2d at 658–59)).

Even if the Court were to find that the Amazon Reports constituted opinions

accompanied by a full recitation of the facts on which they are based, Plaintiff's defamation *per*

---

[9]  The four factors set forth by the Court of Appeals were: (1) "an assessment of whether
the specific language in issue has a precise meaning which is readily understood or whether it is
indefinite and ambiguous"; (2) "a determination of whether the statement is capable of being
objectively characterized as true or false"; (3) "an examination of the full context of the
communication in which the statement appears"; and (4) "a consideration of the broader social
context or setting surrounding the communication including the existence of any applicable
customs or conventions which might 'signal to readers or listeners that what is being read or
heard is likely to be opinion, not fact.'"  *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 292 (1986)
(quoting *Ollman v. Evans*, 750 F.2d 970, 983 (D.C. Cir. 1984) (en banc)).

*se* claim would not be subject to dismissal at this stage of the litigation because Plaintiff has provided sufficient grounds to infer that the Amazon Reports "may cross the line into becoming potentially actionable mixed opinions or factual statements." *Stiene*, 2025 WL 893456, at *3; *see Unlimited Cellular*, 677 F. Supp. 3d at 199 (finding defendant's reports that plaintiff's eBay listings were violating intellectual property rights were "actionable as mixed opinions" because it was "reasonable to conclude" that "eBay relie[d] on [the reports] with the presumption that facts exist which justify the opinion but are unknown to [it]" as the "reports d[id] not need to be substantiated with proof of infringement"). Plaintiff has alleged that Amazon will consider any complaints of infringement "valid and actionable" unless the seller can prove that the complaint "is false." (Compl. ¶ 38.) Thus, Plaintiff's pleading demonstrates that if a seller can show that the disclosed facts underlying an infringement complaint "are false," then "the disparity between the stated facts" in the complaint and "the truth would cause [Amazon] to question the opinion's validity" and find the complaint invalid. *See Enigma Software*, 194 F. Supp. 3d at 281 (explaining that where "the predicate facts are disclosed but are false, such that the disparity between the stated facts and the truth would cause a reader to question the opinion's validity, the opinion may be an actionable defamatory opinion" (quotation marks, brackets, and citation omitted)). Plaintiff has sufficiently pleaded that the Amazon Reports were false by alleging that its Skullcandy Product listings were for genuine and unaltered products sold in original packaging. If the products were not counterfeit, the purported facts that Defendants provide in the Amazon Reports — that the products bear Skullcandy's mark and are not in Skullcandy's brand catalog — may also be false and Plaintiff has sufficiently pleaded that Defendants "had knowledge of the falsity or probable falsity." *DiFolco*, 622 F.3d at 114. (*See* Compl. ¶¶ 34, 41, 73). Specifically, Plaintiff has alleged that Defendants filed the Amazon Reports under penalty of perjury even though, by Skullcandy's own General Counsel's admission, Plaintiff's

Skullcandy Products "may be authentic products that were merely 'improperly diverted'" and Defendants "ha[d] no conclusive evidence that the alleged product[s] [are] in fact counterfeit." (Compl. ¶¶ 43–45, 85.)  *See Wexler v. Allegion (UK) Ltd.*, No. 16-CV-2252, 2017 WL 946301, at *6 (S.D.N.Y. Mar. 9, 2017) (holding that the defendants' alleged statements that the plaintiff's work had been "unsatisfactory" and he was "unworthy of continued employment" may be actionable opinion because they "may be found to be based on false facts within [the former employers'] knowledge").

Accordingly, the Court finds that Plaintiff has stated a claim for defamation *per se* and denies Defendants' motion to dismiss this claim.

### d.    Plaintiff's tortious interference with contract claim

Defendants argue that Plaintiff's tortious interference with contract claim should be dismissed because Plaintiff has not adequately alleged the existence of a contract between it and Amazon, that Defendants knew about any purported agreement or its terms or intentionally procured a breach, or that Amazon breached an agreement.  (Defs.' Mem. 12–14; Defs.' Reply 7–9.)  In support, Defendants contend that Plaintiff "purport[s] to summarize a single provision of its agreement with Amazon without quoting the language of the agreement, identifying any other terms of the agreement, or even attaching a copy of the entire agreement to [the] Complaint," (Defs.' Mem. 12–13), and provides no "details regarding the formation of the contract, the date it took place, and the contract's major terms," (Defs.' Reply 7).  Defendants also contend that Plaintiff's allegations do "not point to any provision of the [BSA] that *requires* Amazon to make its platform available to [Plaintiff] to sell and promote its products" and "the absence of any such affirmative obligation" along with Plaintiff's failure to adequately plead existence of a contract preclude Plaintiff from "plausibly alleg[ing]" that "Amazon breached its purported agreement with Plaintiff."  (Defs.' Mem. 14; Defs.' Reply 8–9.)  Defendants argue that

Plaintiff cannot "point to any allegations in the Complaint sufficient to plead [Defendants']

'actual knowledge' of the purported contract between [Plaintiff] and Amazon," (Defs.' Reply 8;

Defs.' Mem. 13–14), and paragraph 33 of the Complaint, where Plaintiff alleges "(merely on

information and belief) that [Defendants] submitted the [Amazon Reports] with the goal that

'Amazon would suspend or terminate its relationship with Plaintiff'" is "devoid of any factual

support," and "merely parrots the pleading requirement that it was [Defendants'] 'objective' to

procure Amazon's alleged breach of its contract with [Plaintiff]," (Defs.' Reply 8).  Defendants

contend that they are "relying on uniform Second Circuit precedent" that Plaintiff "must allege

facts creating a plausible inference that Defendants had some actual knowledge that the contract

existed." (Defs.' Reply 7–8.)

  Plaintiff argues that its allegations that "[Plaintiff] and Amazon entered into a legally

binding contract known as the [BSA], which legally governs [Plaintiff's] ability to sell products

through its storefront," and "identif[y] and summariz[e] the BSA's relevant major terms, namely

Paragraph S-1.2," plead the existence of a valid contract.  (Pl.'s Opp'n 11.)  Plaintiff also argues

that it sufficiently alleges that Amazon breached the BSA "by deactivating [Plaintiff's] listings

of Skullcandy Products (and, since the filing of this litigation, suspending) [Plaintiff's] entire

Amazon seller account."  (*Id.* at 12.)  Plaintiff argues that although it sufficiently alleges a breach

of the BSA, and that Defendants were the but-for cause of the breach, "the extent to which

Amazon's conduct constitutes a breach of the BSA is a question of fact not suitable for

determination on a motion to dismiss."  (*Id.* at 11–12.)  Plaintiff argues that Defendants seek to

impose a higher pleading standard than New York law requires because it is not required to

"plead that the defendant had perfect or precise knowledge of the terms and conditions of the

contracts at issue."  (*Id.* at 11 (quoting *State St. Glob. Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d

322, 349 (S.D.N.Y. 2020)).)  Plaintiff argues that "after affording the Complaint all required

favorable inferences," the allegation that Defendants filed the reports knowing that Amazon would suspend or terminate its relationship with Plaintiff in violation of the BSA's provisions "imputes" to Defendant knowledge of the BSA and is "sufficient to show Defendant's intentional procurement of Amazon's breach of the BSA — namely that Defendants filed [their] false reports with the *objective* of having Amazon terminate its relationship with YCF, in breach of the BSA." (*Id.* at 11–12.)

Under New York law, plaintiffs claiming tortious interference with contract must plead (1) "the existence of a valid contract between the plaintiff and a third party"; (2) the "defendant's knowledge of the contract"; (3) the "defendant's intentional procurement of the third-party's breach of the contract without justification"; (4) the "actual breach of the contract"; and (5) "damages resulting therefrom." *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 343 (2d Cir. 2024) (quoting *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126–27 (2d Cir. 2019)); *see also Red Fort Cap., Inc. v. Guardhouse Prods. LLC*, No. 19-CV-686, 2020 WL 5819549, at *5 (S.D.N.Y. Sept. 30, 2020) (quoting *Kirch*, 449 F.3d at 401) (same). "The plaintiff must allege that the contract would not have been breached but for the defendant's conduct." *Regeneron*, 96 F.4th at 343 (internal quotation marks omitted) (quoting *Rich*, 939 F.3d at 126–27); *Pl. Funding Holding, LLC v. Blue Ocean Partners LLC*, No. 22-CV-4094, 2024 WL 3524497, at *5 (S.D.N.Y. July 24, 2024) ("[A] plaintiff must allege that the defendant's actions were the 'but for' cause of the alleged breach — in other words, that there would not have been a breach but for the activities of the defendant." (citations omitted)).

Even assuming that Plaintiff has alleged most of the elements of a tortious interference with contract claim,[10] Plaintiff fails to state a claim because it has failed to specifically plead that

---

[10] The Court assumes without deciding that when construing the Complaint liberally and

Defendants had knowledge of the Paragraph S-1.2 or the BSA and intentionally procured the breach of the agreement. Plaintiff alleges that "[a]t all relevant times" Defendants were "aware of . . . Plaintiff's contractual relationship with Amazon" and "the terms and conditions of Amazon's BSA and related policies," (Compl. ¶¶ 108–09); Defendants "had actual knowledge that [their] actions would cause Amazon to suspend Plaintiff's ability to sell Skullcandy Products on Amazon," (*id.* ¶ 113); Defendants "intentionally and improperly interfered with Plaintiff's advantageous and contractual relationship with Amazon by complaining, in writing, to Amazon, that Plaintiff was selling counterfeit products," (*id.* ¶ 110); and Defendants' "conduct directly and proximately caused disruption of Plaintiff's . . . contract with Amazon, including a breach of Paragraph S-1.2," (*id.* ¶ 111). Plaintiff also alleges on information and belief that Defendants were aware of Amazon's "policy with respect to reports of intellectual property infringement" and that "Amazon acts on reports of counterfeit products, regardless of the truth of the report," (*id.* ¶¶ 39–40).

---

drawing all reasonable inferences, Plaintiff's allegations, though minimal, sufficiently allege (1) the existence of a valid contract between it and Amazon as Plaintiff identifies a material term of the contract, Paragraph S-1.2 of the BSA, that governed Plaintiff's ability to list and promote Skullcandy Product listings, and Plaintiff's Amazon storefront was active at the time Defendants submitted the reports, (*see* Compl. ¶¶ 48–50, 58, 107, 111); (2) a contract breach as Plaintiff alleges that Amazon's suspension of Plaintiff's Skullcandy Product listings breached Paragraph S-1.2 by revoking Plaintiff's ability to sell the products, (*see id.* ¶¶ 111–12); (3) Defendants were the but-for cause of the breach because the Amazon Reports caused Amazon to suspend Plaintiff's listings, (*see id.* ¶¶ 110–11); and (4) damages in the form of lost revenue, (Compl. ¶ 117; *see also* ¶¶ 58–62). *See AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 339 (S.D.N.Y. 2024) (finding it reasonable to infer that an employee's nondisclosure agreement was a valid contract that was breached due to the alleged tortious act of interference despite the absence of "any allegations demonstrating when the [nondisclosure agreement] was signed, whether it was even valid, and what specific provision was breached" on a motion to dismiss and noting that "[w]hether all of that proves to be true is a matter for a later juncture"); *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 610 n.7 (S.D.N.Y. 2008) (inferring on a motion to dismiss that the agreements plaintiff alleged in its complaint were enforceable since the complaint alleged the existence of an agreement and that the agreement had been signed).

However, Plaintiff's allegations merely state without any support that Defendants knew that Plaintiff had a contractual relationship with Amazon.[11] Even accepting as true Plaintiff's allegation on information and belief that Defendants were aware of Amazon's policy of acting on counterfeit infringement reports, there is no basis to infer that Defendants knew that the BSA or its terms governed the relationship between Amazon and its sellers including Plaintiff. *See Variblend Dual Dispensing Sys. LLC v. Crystal Int'l (Grp.) Inc.*, No. 18-CV-10758, 2022 WL 17156550, at *7 (S.D.N.Y. Nov. 22, 2022) (dismissing tortious interference with contract claim where there was no basis to conclude that defendant "had actual knowledge of the terms of the contract and of the contractual obligation that was allegedly breached" (quoting *Taboola, Inc. v. Ezoic Inc.*, No. 17-CV-9909, 2021 WL 2041639, at *9 (S.D.N.Y. May 21, 2021))); *Pelkowski v.*

---

[11] Plaintiff's allegations made on information and belief do not relieve it of the burden of providing factual support for the allegations that it argues establish that Defendants had knowledge of its contract with Amazon. The Second Circuit has explained:

> A plaintiff may satisfy the plausibility standard by pleading facts upon information and belief, but a plaintiff "cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when "the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible."

*Evergreen E. Coop. v. Whole Foods Mkt., Inc.*, No. 21-2827, 2023 WL 545075, at *2 (2d Cir. Jan. 27, 2023) (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018)); *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (noting that a plaintiff is not prevented from pleading "facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible," rather the plausibility standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegality" (internal quotation marks and citations omitted)); *see also Mott v. County of Monroe*, No. 20-CV-6809, 2021 WL 2042623, at *4 (W.D.N.Y. May 21, 2021) ("When a plaintiff sets out allegations on information and belief, he is representing that he has a good-faith reason for believing what he is saying, but acknowledging that his allegations are based on secondhand information that [he] believes to be true." (quoting *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 431–32 (S.D.N.Y. 2014))).

*Hovermann*, No. 20-CV-1845, 2021 WL 9032222, at *7 (E.D.N.Y. Sept. 9, 2021) (concluding that absence of "allegations that defendants specifically knew about any of the terms" of the contract at issue was a "deficiency" that was "fatal" to plaintiff's tortious interference with contract claim); *see also Medtech Prods. Inc. v. Ranir, LLC*, 596 F. Supp. 2d 778, 797 (S.D.N.Y. 2008) (dismissing tortious interference with contractual relations claim after finding "inadequate the general claim of [defendant's] knowledge of the contracts" because allegations did not support that the defendant "was aware of the limitations" the contracts imposed).

Although Plaintiff is correct that New York law does not require that Plaintiff plead "perfect or precise knowledge of the terms and conditions of the contracts at issue," (Pl.'s Opp'n 11 (citing *State St.*, 431 F. Supp. 3d at 349)), Plaintiff's allegations must show that Defendants had "*some* knowledge of the terms and conditions of the allegedly-interfered-with contract," *State St.*, 431 F. Supp. 3d at 349 (emphasis added), which Plaintiff fails to do in the Complaint. Moreover, contrary to Plaintiff's argument, the Complaint does not contain allegations from which the Court can "impute" to Defendants the knowledge that the BSA or any contract governed Plaintiff's relationship with Amazon or the knowledge that Amazon breached Paragraph S-1.2 due to Amazon Reports. (Pl.'s Opp'n 12.) The Court is required to draw all reasonable inferences in favor of the Plaintiff, but Plaintiff must "plead[] factual content that allows the [C]ourt to draw the reasonable inference'" that Defendants knew that the BSA and Paragraph S-1.2 in particular governed Plaintiff and Amazon's business relationship or Plaintiff's selling privileges. *Roe*, 91 F.4th at 651; *see, e.g.*, *AT&T Corp. v. Atos IT Sols. & Servs., Inc.*, 714 F. Supp. 3d 310, 339 (S.D.N.Y. 2024) (inferring that AT&T knew of the alleged nondisclosure agreement between its competitor and a third party because AT&T knew that the competitor's "employees had agreements requiring them not to disclose confidential information" and the court had "[n]o doubt AT&T had similar agreements with its own

employees"); *SLS Brands, LLC v. Authentic Brands Grp., LLC*, No. 19-CV-8115, 2021 WL 396641, at *3 (S.D.N.Y. Feb. 4, 2021) (finding "it plausible to infer, for the purposes of [the motion to dismiss], that [defendant] had 'some knowledge'" of the licensing agreement between plaintiff and the licensors because defendant "was actively working alongside [the licensors] to replace" plaintiff as the seller of their skincare products and presumably learned during negotiations that plaintiff had previously contracted with them); *State St.*, 431 F. Supp. 3d at 349 (drawing the inference in defendant's favor on counterclaim for tortious interference with contract that plaintiff knew about the agreement and the breached provision because the knowledge was implied in an email exchanged between the counsel for the parties); *see also Taboola, Inc. v. Ezoic Inc.*, No. 17-CV-9909, 2020 WL 3965308, at *7 (S.D.N.Y. Feb. 21, 2020) (dismissing tortious interference with contract counterclaim where allegation that plaintiff had actual knowledge of the agreements lacked "factual assertions identifying the source of its information and the grounds for its belief"), *report and recommendation adopted*, 2020 WL 1900496 (S.D.N.Y. Apr. 17, 2020).

Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's tortious interference with contract claim.

### e.    Plaintiff's tortious interference with business relations claim

Defendants argue that Plaintiff's tortious interference with business relations claim should be dismissed because Plaintiff does not plausibly allege (1) that Defendants "engaged in conduct that would constitute a crime or an independent tort" or "otherwise used wrongful means," (Defs.' Mem. 16), as "the Amazon [Reports] are merely statements of pure opinion that are not actionable as defamation" and Plaintiff points to "no plausible allegation that [Defendants] acted for any reason other than [their] earnest, subjectively held belief that the Skullcandy listings on Plaintiff's digital storefront were counterfeit," (Defs.' Reply 9–10 (internal quotation marks and citation

omitted)); and (2) that Defendants "acted solely out of malice," (Defs.' Mem. 15; Defs.' Reply 9–10).  Defendants contend that "the Court should not credit" Plaintiff's allegation that Defendants "submitted the [Amazon Reports] 'to increase [Skullcandy's] profits by controlling the distribution and pricing of products'" because Plaintiff makes it "on information and belief" and offers no supporting facts, (Defs.' Mem. 15–16), but that if the Court does consider Plaintiff's allegation, "the mere desire to prevent competition and enhance sales does not give rise to a cognizable claim for tortious interference with prospective business relations," (*id.* at 16).  Defendants also argue that Plaintiff's allegation that the Amazon Reports "caused Amazon to suspend [Plaintiff's] listing of Skullcandy products" does not constitute harm to the underlying business relationship.  (Defs.' Mem. 16–17; Defs.' Reply 10–11.)

Plaintiff argues that it is "simply untrue" that it has not adequately alleged that Defendants engaged in wrongful conduct because the Amazon Reports "falsely accusing [Plaintiff] of trademark infringement" are not "simple persuasion" but rather "an actionable defamatory statement" that is "sufficient to assert a tortious interference claim."  (Pl.'s Opp'n 12–13.)  In support, Plaintiff argues that it sufficiently alleges in the Complaint that Defendants acted solely with malice by alleging that Defendants "knowingly filed false and defamatory reports on Amazon — under penalty of perjury — even though [Defendants] ha[d] no conclusive evidence that the alleged product is in fact counterfeit."  (*Id.* at 13–14 (second alteration in original).)  Plaintiff argues that it has alleged that Defendants injured its relationship with Amazon because it explains in the Complaint "that Plaintiff's listings for Skullcandy Products were suspended, and that it suffered damage to its performance metrics and other harm."  (*Id.* at 14–15.)  Further, Plaintiff contends the Amazon Reports demonstrate that Defendants were expressly seeking to interfere in its relationship with Amazon as "it was at [Defendants'] behest that Amazon suspended [Plaintiff's] Skullcandy Products."  (*Id.* at 15.)

Under New York law, to state a claim for tortious interference with business relations, "a plaintiff must show that (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship.'" *Pride Techs., LLC v. Khublall*, No. 21- 2225, 2022 WL 17587755, at *1 (2d Cir. Dec. 13, 2022) (quoting *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015));[12] *see also Fika Midwifery PLLC v. Indep. Health Assn., Inc.*, 173 N.Y.S.3d 761, 765 (App. Div. 2022) (identifying the same four requirements) (quoting *Amaranth LLC v J.P. Morgan Chase & Co.*, 888 N.Y.S.2d 489, 494 (App. Div. 2009)).  A defendant must have engaged in "conduct directed *not at the plaintiff itself*, but at the party with which the plaintiff has or seeks to have a relationship." *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 107 (2d Cir. 2012) (quoting *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004)); *Rose Leaf Cleaning, Inc. v. Sonder Hosp. USA, Inc.*, No. 22-CV-7462, 2024 WL 3937600, at *12 (S.D.N.Y. Aug. 26, 2024) (quoting same).  "New York courts have placed some limits on what constitutes 'business relations' by rejecting, for example, a claim containing 'only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific . . . business relationship.'" *16 Casa Duse*, 791 F.3d at 262 (quoting *McGill v. Parker*, 582 N.Y.S.2d 91, 95 (App. Div. 1992)); *Espinoza v. CGJC Holdings LLC*, No. 23-CV-9133, 2025 WL 459913, at *4 (S.D.N.Y. Feb. 11, 2025) (quoting same).  "[T]he plaintiff must allege a specific business relationship with an identified third party with which the defendants interfered." *Mehrhof v.*

---

[12]  A claim for tortious interference with prospective economic advantage is identical to a claim of tortious interference with business relations. *See 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (noting that tortious interference with business relations is "also known as tortious interference with prospective economic advantage").

*Monroe-Woodbury Cent. Sch. Dist.*, 91 N.Y.S.3d 503, 505 (App. Div. 2019) (first citing *N.Y. Tile Wholesale Corp. v. Thomas Fatato Realty Corp.*, 61 N.Y.S.3d 136 (App. Div. 2017); then citing *Bus. Networks of N.Y., Inc. v. Complete Network Sols., Inc.*, 696 N.Y.S.2d 433 (App. Div. 1999); and then citing *Burns Jackson Miller Summit & Spitzer v. Lindner*, 452 N.Y.S.2d 80 (App. Div. 1982), *aff'd* 59 N.Y.2d 314 (1983)); *JoySuds, LLC v. N.V. Labs, Inc.*, 668 F. Supp. 3d 240, 258 n.4 (S.D.N.Y. 2023) (same).

In addition, the New York Court of Appeals has explained that "'a defendant's conduct must amount to a crime or an independent tort' in order to amount to tortious interference with a prospective economic advantage." *Hernandez v. Kwiat Eye & Laser Surgery, PLLC*, No. 23-7679, 2024 WL 5116365, at *4 (2d Cir. Dec. 16, 2024) (quoting *Carvel*, 3 N.Y.3d at 190). "A defendant who has not committed a crime or independent tort or acted solely out of malice may nevertheless be liable if he has employed 'wrongful means,'" which include "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions" and "extreme and unfair economic pressure." *Friedman v. Coldwater Creek, Inc.*, 321 F. App'x 58, 60 (2d Cir. 2009) (first quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (1980); and then quoting *Carvel Corp.*, 3 N.Y.3d at 190); *Kohler Co. v. Signature Plumbing Specialties LLC*, No. 23-CV-9686, 2024 WL 4880069, at *5 (S.D.N.Y. Nov. 25, 2024) (same). If the defendant's "motive in interfering . . . was normal economic self-interest," the defendant did not use unlawful means. *See Carvel*, 3 N.Y.3d at 190; *Cartiga, LLCv. Aquino*, No. 24-CV-1014, 2025 WL 388804, at *11 (S.D.N.Y. Feb. 4, 2025) (same).

Plaintiff's tortious interference with business relations claim fails because Plaintiff does not allege how Defendants harmed Plaintiff and Amazon's business relationship.[13] Plaintiff's

---

[13] Plaintiff has sufficiently alleged the remaining three elements of a tortious interference

allegations that the Amazon Reports caused Amazon to suspend Plaintiff's Skullcandy Product listings, damaged its performance metrics, and caused other harm, (Compl. ¶¶ 55, 58, 66–69, 112, 115, 117; Pl.'s Opp'n 14), demonstrate that Plaintiff suffered economic injury from the Amazon Reports, but there are no allegations that the Amazon Reports harmed Plaintiff's relationship with Amazon such as through termination of Plaintiff's storefront or suspension or revocation of all of Plaintiff's selling privileges.[14] *See Ed.'s Pick Luxury LLC v. Red Points*

---

with business relationship claim. Plaintiff has alleged (1) that it had a business relationship with Amazon, (*see* Compl. ¶¶ 105, 108–09), and (2) that Skullcandy interfered with that relationship by complaining "in writing, to Amazon, that Plaintiff was selling counterfeit products," (*id.* ¶ 110; *see also* ¶¶ 111–12), and that Amazon relies on such complaints without investigation, (*see id.* ¶ 38). *See Glob. Supplies NY, Inc. v. Electrolux Home Prods., Inc.*, No. 21-674, 2022 WL 815795, at *3 (2d Cir. Mar. 18, 2022) (finding that plaintiff's allegations that defendant's false intellectual property complaint to Amazon pleaded a direct interference with the plaintiff's business relationship with Amazon where there was "no allegation that Amazon actually considered the substance of [defendant's] complaint when deciding to terminate its business relationship with [plaintiff]"). As to the third element, because the Court finds that Plaintiff has stated a claim for defamation *per se*, *see* Section II.c *supra*, Plaintiff has pleaded that Defendant used "improper means" in committing an independent tort. *Pride Techs., LLC v. Khublall*, No. 21- 2225, 2022 WL 17587755, at *1 (2d Cir. Dec. 13, 2022) (quoting *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015)); *see Amaranth LLC v. J.P. Morgan Chase & Co.*, 888 N.Y.S.2d 489, 494 (App. Div. 2009) ("Defamation is a predicate wrongful act for a tortious interference claim." (citing *Stapleton Studios LLC v. City of New York*, 810 N.Y.S.2d 657 (App. Div. 2006))).

[14] While Plaintiff argues in its opposition that after commencement of this litigation, Amazon suspended its entire Amazon seller account and that it "is available to amend the Complaint to include these additional factual allegations," (Pl.'s Opp'n 10 n.2), these allegations are not included in the Complaint and are therefore not considered by the Court because Plaintiff may not amend the Complaint through its opposition papers. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 107 (2d Cir. 2021) ("A district court therefore 'errs when it . . . relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.'" (quoting *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir. 2000))); *United Specialty Ins. Co. v. LIC Contracting, Inc.*, No. 17-CV-5736, 2024 WL 2815977, at *5 (E.D.N.Y. June 2, 2024) ("Factual allegations contained in legal briefs or memoranda are . . . treated as matters outside the pleading for purposes of Rule 12(b)," *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988), and "[s]uch allegations 'cannot, as a matter of law, cure the deficiencies in [a Complaint].'" (citation omitted) (alterations in original)); *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-CV-1861, 2021 WL 960394, at *11 (E.D.N.Y. Mar. 15, 2021) ("Plaintiff may not amend the [c]omplaint through its moving papers."), *aff'd*, No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022).

*Sols. SL*, No. 22-CV-7463, 2023 WL 6385993, at *5 (S.D.N.Y. Sept. 29, 2023) (dismissing

tortious interference claim where plaintiff alleged that Shopify, an e-commerce platform, "took

down [its] listings for the nine products that allegedly infringed on the [intellectual property] of

[d]efendants' clients" after "question[ing] how seriously [d]efendants interfered with [p]laintiff's

continuing business relationship or contract with Shopify, given that its storefront remain[ed]

intact"); *CDC Newburgh*, 692 F. Supp. 3d at 224 (dismissing tortious interference with business

relationship claim because "removal of listings on an e-commerce platform does not constitute

harm to the underlying business relationship with the platform" and the plaintiff's claim "rest[ed]

entirely on its allegation" that "Amazon removed [its product] listings that [d]efendant reported

as infringing on their [t]rademarks"); *Unlimited Cellular*, 677 F. Supp. 3d at 200 (dismissing

tortious interference with contract claim where plaintiff's allegations gave no indication that the

nature of its relationship with eBay was altered by defendant submitting infringement reports to

eBay and it appeared from the complaint that the "underlying relationship" between plaintiff and

eBay "remain[ed] intact"); *Eminah Props.*, 531 F. Supp. 3d at 607 (stating that "black marks"

placed on a seller's account and the removal of listings are not sufficient to establish an injury to

the underlying relationship); *MMS Trading Co. Pty Ltd. v. Hutton Toys, LLC*, No. 20-CV-1360,

2021 WL 1193947, at *15 (E.D.N.Y. Mar. 29, 2021) (concluding that plaintiff's allegations that

it "ha[d] lost, and continue[d] to lose, considerable sales and goodwill," that it "ha[d] received

many inquiries from customers regarding the availability of [the products] that were removed,"

and that its "unsold inventory [was] a financial loss" were insufficient to support that defendant's

copyright infringement complaint to Amazon injured the plaintiff's business relationship with

Amazon); *see also Alzheimer's Disease Rsch. Ctr., Inc. v. Alzheimer's Disease & Related

Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153, 164–65 (E.D.N.Y. 2013) ("While the allegations

suggest injury in the form of lost donations, the [plaintiff] fails to particularize any damage to its

*relationships* with its donors.").

Plaintiff's reliance on *Josie Maran Cosmetics, LLC v. Shefa Group LLC*, 624 F. Supp. 3d 281 (E.D.N.Y. 2022), is unavailing.  In *Josie Maran*, a third-party reseller alleged that a brand owner had tortiously interfered with the reseller and Amazon's business relationship by falsely reporting to Amazon that the reseller was selling counterfeit products in violation of the brand owner's intellectual property rights.  624 F. Supp. 3d at 285.  The reseller alleged that Amazon suspended the listings for the products due to the complaints and that, after the reseller's counsel demanded the brand owner retract the complaints, the brand owner informed Amazon that the complaints "were filed in error."  *Id.* at 285.  The reseller also alleged that it lost revenue from the temporary suspension of the product listings.  *Id.*  The court relied on *Global Supplies NY, Inc. v. Electrolux Home Products, Inc.*, No. 21-674, 2022 WL 815795 (2d Cir. Mar. 18, 2022), to conclude that the reseller stated a claim for tortious interference in part by alleging that "the temporary removal of [the reseller's] listing content . . . caused the disruption of [its] relationship and contract with Amazon, resulting in diminished performance metrics, lost revenue, and increased risk of account suspension."  *Id.* at 295.  The court explained that "the Second Circuit found that the report in *Global Supplies* constituted tortious interference because the 'complaint had the specific effect of causing Amazon to terminate its business relationship with Global Supplies,' and not 'some generalized reputational harm as a result of [the] false complaint, or that the defendants' complaints merely harmed its ability to form business relationships with Amazon and others.'"  *Id.* at 294 (quoting *Global Supplies*, 2022 WL 815795, at *2).  The court interpreted "the Circuit's reasoning" as "not limited to scenarios in which there was termination of the business relationship" and indicated that "it can apply to any situation in which there was an 'economic injury' that had a 'specific effect' on a business relationship."  *Id.* at 294.

Both the facts and reasoning in *Josie Maran* are distinguishable. The product listing suspension in *Josie Maran* was temporary as the brand owner retracted its complaint at the reseller's request. In contrast, Defendants have not retracted the Amazon Reports. (Compl. ¶ 57.) More significantly, as to the reasoning, the Court is not persuaded that the Second Circuit's summary order in *Global Supplies* supports that the suspension of two product listings constitutes harm to Plaintiff and Amazon's business relationship. In *Global Supplies*, the Second Circuit reversed a district court's holding that allegations of a brand owner submitting a false intellectual property complaint that "had the specific effect of causing Amazon to terminate its business relationship with [a third party reseller]" amounted to a defamation claim and was thus subject to, and barred by, the one-year statute of limitations for defamation rather than the three-year limitation for tortious interference claims. 2022 WL 815795, at *1–2. The reseller alleged that the brand owner knew of the reseller's "specific business relationship with Amazon," that "the relationship would be harmed by reporting [the reseller] for patent infringement," and that the brand owner's complaint to Amazon "had the specific effect of causing Amazon to terminate its business relationship with [the reseller]." *Id.* at *2. The reseller also alleged that Amazon terminated its business relationship, resulting in "750,000 in damages, including $574,000 in lost profits, Amazon storage charges, lost inventory, the cost of getting reinstated at Amazon, and other fees." *Id.* The Second Circuit held that for purposes of the statute of limitations, the allegations gave rise to a "claim sound[ing] in tortious interference because [the claim was] chiefly based on economic injury, not merely generalized reputational harm." *Id.* The court concluded that, although the brand owner's complaints to Amazon "stain[ed]" the reseller's reputation, "the direct and proximate cause of the termination of [the reseller's] business relationship with Amazon was that [the reseller] was the target of a sufficient number of unretracted intellectual property complaints" and there was no allegation that "Amazon actually

43

considered the substance of [the brand owner's] complaint when deciding to terminate its business relationship with [the reseller]." *Id.* at *3. Thus, in *Global Supplies*, the Second Circuit found that the allegations amounted to tortious interference because the injury was Amazon terminating the business relationship, which was economic harm, rather than any reputational harm that the complaints may have caused. The Second Circuit expressly limited its holding to that "particular situation, as pled within the amended complaint" and did not consider whether actions short of full termination of a business relationship, such as Amazon suspending individual product listings, would constitute an economic injury to the underlying business relationship.[15] *Id.*

Accordingly, the Court grants Defendants' motion to dismiss and dismisses Plaintiff's tortious interference with business relations claim.

### f. Plaintiff's declaratory judgment claim

Defendants argue that the Court should decline to exercise jurisdiction over Plaintiff's declaratory judgment claim based on two of the six factors that courts consider when deciding whether to exercise jurisdiction over declaratory judgment non-infringement claims. (Defs.' Reply 1–2.) Defendants contend that granting declaratory relief (1) will not "serve any useful

---

[15]  The Court's position is consistent with *Editor's Pick Luxury LLC v. Red Points Sols. SL*, No. 22-CV-07463, 2023 WL 6385993, at *1 (S.D.N.Y. Sept. 29, 2023), where the court considered the decisions in both *Josie Maran* and *Global Supplies* before dismissing the plaintiff's tortious interference with business relations claim. In *Editor's Pick*, the plaintiff alleged that Shopify, an e-commerce platform, suspended nine of its product listings and warned that it might potentially close plaintiff's online storefront in response to defendants' reports that plaintiff's products were violating the intellectual property rights of defendants' clients. 2023 WL 6385993, at *1. The court distinguished *Josie Maran* on the basis that the brand owner retracted its infringement reports to Amazon and distinguished *Global Supplies* on grounds that there "defendant made knowingly false [intellectual property] reports that were 'the direct and proximate cause of the termination of its business relationship with Amazon.'" *Id.* at *4. The court "question[ed] how seriously [d]efendants interfered with [p]laintiff's continuing business relationship or contract with Shopify, given that its storefront remain[ed] intact." *Id.* at *5.

purpose in clarifying or settling the legal issues involved" because "[i]t is well settled" that a "declaration that a plaintiff did not sell counterfeit products" is not a legal issue for the court, (Defs.' Mem. 6–7; Defs.' Reply 2–3), and (2) will not "finalize the controversy or offer relief from uncertainty," (Defs.' Reply 7), because, as "multiple courts have recognized," a declaration of non-infringement will not remedy Plaintiff's "alleged primary harm" of "suspension of its Skullcandy listings from Amazon, and the attendant loss of customer sales" (Defs.' Mem. 7; Defs.' Reply 2–3).

Plaintiff argues that "there is a genuine case or controversy concerning whether [it] infringes [Defendants'] trademark rights or any other rights, in view of [Defendants'] false Amazon reports alleging that [Plaintiff] sold 'counterfeit' Skullcandy Products, which directly resulted in the suspension of Plaintiff's entire Amazon selling account." (*Id.* at 4–5.) Plaintiff contends that courts may generally hear cases "asking for declarations of trademark infringement" and contends that a declaratory judgment will be "instrumental in clarifying or settling the legal issues" over whether its "resale of genuine brand new Skullcandy Products through its Amazon Storefront — as is permitted under the first sale doctrine — violates any of [Defendants'] rights under federal or state law." (*Id.* at 5.) Plaintiff also argues that declaratory relief will "undoubtedly finalize the controversy and offer relief from uncertainty" because without the relief, Defendants could "continue broadcasting assertions of infringement" that would "prevent [Plaintiff] from being able to reinstate its, currently suspended, Amazon storefront along with its listings of Skullcandy Products." (*Id.*)

The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C.

§ 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007) (quoting same);

*Sunvestment Energy Grp. NY 64 LLC v. Nat'l Grid USA Servs. Co., Inc.*, 116 F.4th 106, 113 (2d

Cir. 2024) (same).  For the purposes of the Declaratory Judgment Act, "actual controversy"

means "whether the facts alleged, under all the circumstances, show that there is a substantial

controversy, between parties having adverse legal interests, of sufficient immediacy and reality

to warrant the issuance of a declaratory judgment."  *MedImmune*, 549 U.S. at 127 (quoting *Md.

Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)); *Principal Life Ins. Co. v. Brand*,

No. 21-2716, 2023 WL 8270721, at *5 (2d Cir. Nov. 30, 2023) (quoting same); *see also Nike,

Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013).  "The

[Declaratory Judgment Act] does not create an independent basis for federal subject-matter

jurisdiction," as the Act "only provides courts with discretion to fashion a remedy, not a cause of

action."  *Sunvestment*, 116 F.4th at 113–14.  Rather, where "the remedy sought is a mere

declaration of law without implications for practical enforcement upon the parties, the case is

properly dismissed."  *Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council*, 729 F. App'x

33, 40 (2d Cir. 2018) (quoting *Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d

811, 817 (2d Cir. 1975)); *C.S. ex rel. R.S. v. N.Y.C. Dep't of Educ.*, No. 21-CV-10596, 2023 WL

2368987, at *8 n.7 (S.D.N.Y. Mar. 6, 2023) (quoting same).

Federal courts have "unique and substantial discretion in deciding whether to declare the

rights of litigants" under the Declaratory Judgment Act.  *MedImmune*, 549 U.S. at 136 (quoting

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *Peconic Baykeeper, Inc. v. Suffolk County*,

600 F.3d 180, 187 (2d Cir. 2010) (quoting same); *see also Farrakhan*, 2025 WL 24066, at *3

("The Declaratory Judgment Act by its express terms vests a district court with discretion to

determine whether it will exert jurisdiction over a proposed declaratory action or not. . . . [and]

[w]e have emphasized that the district court's discretion is 'broad' . . . .'" (quoting *Dow Jones &*

*Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (per curiam))).  "[E]ven assuming that all

the prerequisites for a declaratory judgment have been met, the [Declaratory Judgment Act]

'confers a discretion on the courts rather than an absolute right upon the litigant.'"  *Sunvestment*,

116 F.4th at 114 (quoting *Wilton*, 515 U.S. at 287).  The Second Circuit instructs district courts

to consider certain prudential factors, "to the extent they are relevant," in determining whether to

exercise their discretion to consider a declaratory judgment action, including:

> (1) whether the [declaratory] judgment [sought] will serve a useful
> purpose in clarifying or settling the legal issues involved; (2)
> whether [such] a judgment would finalize the controversy and offer
> relief from uncertainty; (3) whether the proposed remedy is being
> used merely for procedural fencing or a race to res judicata; (4)
> whether the use of a declaratory judgment would increase friction
> between sovereign legal systems or improperly encroach on the
> domain of a state or foreign court; (5) whether there is a better or
> more effective remedy.

*Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99–100 (2d Cir. 2023) (alterations

in original) (internal quotation marks omitted) (first quoting *Reifer v. Westport Ins. Corp.*, 751

F.3d 129, 146 (3d Cir. 2014); and then quoting *Niagara Mohawk Power Corp. v. Hudson River-*

*Black River Reg. Dist.*, 673 F.3d 84, 105 (2d Cir. 2012)).  Inherent in district courts'

"broad . . . discretion . . . to refuse to exercise jurisdiction" under the DJA, *Dow Jones*, 346 F.3d

at 359, is a similarly broad discretion to weigh the factors.  *Admiral Ins.*, 57 F.4th at 100.  "[N]o

one factor is sufficient" and, "[l]ikewise, the[] factors are non-exhaustive . . . ."  *Id.* (first

alteration in original) (quoting *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014)).

Courts have dismissed declaratory judgment claims when they are duplicative of other viable

claims that can resolve the underlying legal issues.  *See Ambac Assurance Corp. v. U.S. Bank*

*Nat'l Ass'n*, No. 21-70, 2021 WL 6060710, at \*5 (2d Cir. Dec. 20, 2021) (holding that the

district court did not abuse its discretion in declining to adjudicate a declaratory judgment claim

because "no useful purpose would be served by granting [plaintiff] declaratory relief" because

"[t]he issues on which [plaintiff] seeks declaratory relief . . . necessarily had to be decided in the resolution of the breach of contract claims"); *Ed.'s Pick*, 2023 WL 6385993, at *3 (dismissing declaratory judgment claims on the basis that "the [c]ourt's resolution of [p]laintiff's defamation and tortious interference claims will resolve and finalize the legal issues contained in the declaratory judgment motion" (citation omitted)); *Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 623 (S.D.N.Y. 2014) (concluding that "declaratory relief in th[e] case would be wholly superfluous, as the resolution of [the plaintiff's] other claims would 'settle the issues for which declaratory judgment is sought'" (citation omitted)), *aff'd sub nom. Maria Re Ltd. ex rel. Varga v. Am. Fam. Mut. Ins. Co.*, 607 F. App'x 123 (2d Cir. 2015); *see also Oppedisano v. Zur*, No. 20-CV-5395, 2024 WL 967260, at *9 (S.D.N.Y. Mar. 5, 2024) ("[A] declaratory judgment claim is unnecessary if it 'seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action.'" (quoting *Sofi Classic S.A. de C.V. v. Hurowitz*, 444 F. Supp. 2d 231, 249–50 (S.D.N.Y. 2006)), *reconsideration denied*, 2024 WL 2154169 (S.D.N.Y. Apr. 2, 2024); *Hahn v. JetBlue Airways Corp.*, 738 F. Supp. 3d 229, 253–54 (E.D.N.Y. 2024) (declining to exercise jurisdiction over declaratory judgment claim where breach of contract claim "will resolve the sole issue presented" in the declaratory judgment claim).

Courts have exercised jurisdiction over claims for declaratory judgments for trademark noninfringement. *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 23-947, 2024 WL 2720235, at *2 (2d Cir. May 28, 2024) (affirming district court's grant of summary judgment to defendants on plaintiff's claim for a declaratory judgment stating that it was not infringing on defendant's marks); *CDC Newburgh*, 692 F. Supp. 3d at 227 ("Federal courts may generally hear cases asking for declarations of trademark noninfringement." (quoting *Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, 628 F. Supp. 3d 501, 514 (S.D.N.Y. 2022))); *Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*, 151 F. Supp. 3d 451, 458–59 (S.D.N.Y. 2015) (denying defendant's motion

to dismiss plaintiff's claim for declaratory judgment of noninfringement of defendant's trademarks for lack of subject-matter jurisdiction in part because "[t]o state the obvious, the declaratory judgment procedure would be pointless in this context if a party had to wait to be sued for infringement before seeking a declaratory judgment of non-infringement"); *Gross v. Bare Escentuals Beauty, Inc.*, 641 F. Supp. 2d 175, 192 (S.D.N.Y. 2008) (granting summary judgment to defendants' on the merits against plaintiffs' claim for declaratory judgment that they were not infringing on defendant's skincare product trademark); *Thompson Med. Co., Inc. v. Nat'l Ctr. of Nutrition, Inc.*, 718 F. Supp. 252, 253 (S.D.N.Y. 1989) ("An action for declaratory judgment of non-infringement is a recognized trademark remedy."); *see also I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*, No. 19-CV-2776, 2020 WL 2086096, at *2 (S.D.N.Y. Apr. 30, 2020) ("Where a plaintiff seeks a declaratory judgment of non-infringement of a defendant's trademarks, no actual case or controversy exists unless the plaintiff can show that the defendant sought or threatened to seek to prohibit plaintiff's use of its mark." (citing *Topp-Cola Co. v. CocaCola Co.*, 314 F.2d 124, 125 (2d Cir. 1963))). *But see Fossil Grp., Inc. v. Angel Seller LLC*, No. 20-CV-2441, 2021 WL 5409605, at *10 (E.D.N.Y. Aug. 27, 2021) (observing that a declaratory judgment for trademark noninfringement is not an appropriate request for relief "in stark contrast to more typical trademark or patent cases" where "plaintiff's anticipated actions may be defined with specificity, making it possible for the court to make an informed determination about the scope of each parties' legal rights" (internal quotation marks and citation omitted))), *report and recommendation adopted*, 2021 WL 4520030 (E.D.N.Y. Oct. 4, 2021).

"Before a court may entertain an action for declaratory relief in the context of trademarks," it must consider whether "the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant." *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 354, 356–57 (2d Cir. 2020) (quoting *Starter Corp. v. Converse, Inc.*, 84 F.3d 592, 595 (2d

Cir. 1996), *abrogation on other grounds recognized by Saleh*, 957 F.3d 348).  A plaintiff must

"adequately allege that he or she 'has engaged in a course of conduct evidencing a definite intent

and apparent ability to commence use of the marks on the product.'" *Id.* at 354 (quoting *Starter*,

84 F.3d at 595).  However, "[e]ven assuming that all the prerequisites for a declaratory judgment

have been met," the Declaratory Judgment Act "confers a discretion on the courts rather than an

absolute right upon the litigant," *Sunvestment*, 116 F.4th at 114 (quoting *Wilton*, 515 U.S. at

287), and "district courts retain 'broad discretion' to decline jurisdiction," *Admiral Ins.*, 57 F.4th

at 99 (quoting *Niagara Mohawk Power*, 673 F.3d at 106 n.7).

The Court declines to exercise jurisdiction over Plaintiff's declaratory relief claim

because the declaration as pleaded is overbroad and, even if the Court were to consider a

narrower declaration, the request would not serve a useful purpose.  Plaintiff seeks a declaratory

judgment that "it has not violated Defendants' trademark rights *or other rights*, whether under

Federal or State law," (Compl. ¶ 78 (emphasis added)), for the purpose of remedying the "issue

of [its] right to sell" trademarked Skullcandy products and "whether the Skullcandy Products

sold by Plaintiff are counterfeit and infringe any of Defendants' trademarks," (*id.* ¶ 77).  Plaintiff

does not specify the "other rights" under federal or state law for the Court to decide and, based

on the stated purpose of the declaration as remedying the issue of Plaintiff's right to resell

genuine trademarked Skullcandy Products, is significantly broader than necessary.  Such an ill-

defined declaratory judgment claim renders it impossible for the Court to conclusively determine

that the broad declaration would "serve a useful purpose in clarifying or settling the legal issues

involved," "finalize the controversy and offer relief from uncertainty," or not "improperly

encroach on the domain" of another court.  *Admiral Ins.*, 57 F.4th at 99–100.  Plaintiff has not

shown any basis for the Court to find such a broad declaration that Plaintiff has not infringed on

unspecified rights beyond trademark rights would have any practical implications on the dispute

before the Court.  *Monbo v. Nathan*, 623 F. Supp. 3d 56, 129 (E.D.N.Y. 2022) (declining to decide declaratory judgments invalidating certain copyrights "because the validity of the [defendants'] copyrights ha[d] no bearing on whether [p]laintiffs' copyrights (or their other rights) were violated" and therefore "would not have practical implications for the dispute between the parties").  Moreover, in arguing for or against dismissal of the claim, the parties describe the claim as one seeking a declaration of non-infringement and ignore Plaintiff's broader request for the Court to declare that Plaintiff has not infringed on Defendants' other federal and state rights.  Thus, the Court declines to exercise jurisdiction over Plaintiff's claim to the extent it seeks a declaration of noninfringement on anything more than Skullcandy's trademarks.  *See Thompson-Allen v. Lib.*, No. 23-CV-1671, 2024 WL 3826737, at *5 (D. Conn. Aug. 14, 2024) (declining to exercise jurisdiction over plaintiff's claim for declaratory judgment as pleaded because a declaration "protecting her from 'any party' holding her liable on 'any theory,'" was "far too broad, on the record before the [c]ourt" and "the parties' briefing appear[ed] to understand [p]laintiff s[ought] a declaratory judgment regarding a potential defamation claim").

As to Plaintiff's specific request for a declaration that it has not violated Defendants' trademark rights, the Court finds it unnecessary to decide given the Court's determination that Plaintiff has alleged a defamatory *per se* claim.[16]  *See supra* Section II.c.  At its core, Plaintiff's declaratory claim is asking the Court to resolve the same question that will need to be addressed to resolve its defamation *per se* claim: whether the two listings that Defendants reported to Amazon as infringing on Skullcandy's marks were for counterfeit goods or genuine Skullcandy

---

[16]  The Court also notes that if Plaintiff amends the Complaint to include the allegation from its papers in opposition to the motion that Amazon suspended its entire Amazon seller account, Plaintiff may be able to satisfy all the elements of a claim for tortious interference with business relations.  *See supra* Section II.e.

Products.  If the facts adduced during discovery prove that the two product listings were for genuine Skullcandy Products, the Amazon Reports that Plaintiff infringed on its marks would be false.  Thus, while a declaration of noninfringement would provide a means for Plaintiff to prove to Amazon that its Skullcandy Products are not counterfeit, and potentially restore its selling privileges for those items, a summary judgment decision or jury verdict in Plaintiff's favor at a later stage of this litigation that Skullcandy's Reports were false would achieve the same result. Therefore, under the circumstances, a declaratory judgment is not needed to "serve a useful purpose in clarifying or settling a legal issue involved," or "finalize the controversy and offer relief from uncertainty," *Admiral Ins.*, 57 F.4th at 99–100, because the legal issues involved are implicated by and will be decided under the defamation *per se* claim.

Accordingly, the Court declines to exercise jurisdiction over Plaintiff's declaratory judgment claim.

### III. Leave to amend

Defendants argue that "the Court should dismiss the Complaint in its entirety with prejudice, and grant [Defendants] such other and further relief as the Court deems just and proper," (Defs.' Mem. 17), because Plaintiff "has not specified — and cannot specify — how its sole proposed amendment (*i.e.*, that its entire Amazon account has now been suspended) would cure the pleading deficiencies in its Complaint," (Defs.' Reply 11).

Plaintiff seeks to amend "to the extent that the Court determines that any aspect of Plaintiff's Amended Complaint is insufficiently pled."  (Pl.'s Opp'n 15 (citing Fed. R. Civ. P. 15(a)(2)).  Plaintiff argues that "since the filing of the Complaint significant developments in this case have occurred," including that "Plaintiff's entire Amazon seller account has been suspended as a direct result of the false infringement reports [Defendants] filed on Amazon."  *Id.*

Leave to amend should be "freely give[n] . . . when justice so requires."  *United States ex*

*rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (quoting Fed. R. Civ. P. 15(a)(2)); *see also Norman v. Experian Info. Sols., Inc.*, No. 23-CV-9245, 2024 WL 3890103, at *1 (S.D.N.Y. Aug. 20, 2024) ("In this Circuit, '[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'" (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991))).  Leave to amend may be denied for good reason, including "instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Ladas*, 824 F.3d at 28 (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)).  In addition, "it is within the sound discretion of the district court to grant or deny leave to amend . . . ." *Broidy Cap. Mgmt. v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).

If the proposed amended complaint includes allegations about events that occurred after the original complaint was filed, Rule 15(d) rather than Rule 15(a) applies.  *See Shubert v. Town of Glastonbury*, No. 18-CV-112, 2020 WL 6395472, at *1 (D. Conn. Nov. 2, 2020) ("Although the plaintiff's motion is styled as a 'motion for leave to amend' and invokes Rule 15(a)(2), it is more properly considered as a motion to supplement the complaint under Rule 15(d) because it seeks to add factual allegations about events postdating the complaint.").  The same substantive standard applies when analyzing a motion under Rules 15(d) and 15(a).  *See Porter v. MooreGroup Corp.*, No. 17-CV-7405, 2020 WL 32434, at *8 (E.D.N.Y. Jan. 2, 2020) ("[T]he substantive analysis under Rules 15(a) and 15(d) is the same."); *see also Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (setting forth standards for amending under Rule 15(a) to support the proposition that motions for leave to amend under Rule 15(d) "should be freely granted" (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

The Court dismisses Plaintiff's trade libel, tortious interference with contract, and tortious interference with business relations claims against Defendants for failure to state a claim

and declines to exercise jurisdiction over Plaintiff's declaratory judgment claim.  Because

Plaintiff requested leave to amend the claims that the Court determined to be insufficiently pled,

the Court grants Plaintiff leave to replead its dismissed claims for trade libel, tortious

interference with contract, and tortious interference with business relations under Federal Rule of

Civil Procedure 15(a) but not its declaratory judgment claim.  The Court also grants Plaintiff

leave to supplement the Complaint to add factual allegations for events that occurred after the

filing of the Complaint pursuant to Federal Rule of Civil Procedure 15(d).

### IV.  Conclusion

For the foregoing reasons, the Court denies Defendants' motion to dismiss as to

Plaintiff's defamation *per se* claim and grants Defendants' motion as to Plaintiff's remaining

claims for trade libel, tortious interference with contract, tortious interference with business

relations, and declaratory judgment against Defendants.  The Court grants Plaintiff leave to

amend and supplement the Complaint.  Any amended complaint must be filed within thirty days

from the filing of this Memorandum and Order.

Dated:  March 27, 2025
       Brooklyn, New York

SO ORDERED:


_____/s/MKB_____
MARGO K. BRODIE
United States District Judge